IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 15, 2005 Session

# BARNES & ROBINSON COMPANY, INC. d/b/a ONE SOURCE OF TENNESSEE, INC. v. ONESOURCE FACILITY SERVICES, INC., ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 03-3863-III     Ellen H. Lyle, Chancellor**

---

**No. M2004-01003-COA-R3-CV - Filed January 23, 2006**

---

Barnes & Robinson Company, Inc. filed this action against two related companies claiming breach of contract, failure to negotiate in good faith, and promissory estoppel. The claims arise from negotiations pursuant to two letters of intent and subsequent representations upon which Barnes & Robinson contends it relied to its detriment. The defendants filed a motion to dismiss contending Barnes & Robinson failed to state any claims upon which relief could be granted, which the trial court granted. Barnes & Robinson appeals. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Jack L. McLean, Jr. and Jason P. Wright, Atlanta, Georgia; and William W. Gibson and Andrew J. Pulliam, Nashville, Tennessee, for the appellant, Barnes & Robinson Company, Inc., d/b/a One Source of Tennessee, Inc.

Grant C. Glassford and James E. Gaylord, Nashville, Tennessee, for the appellees, OneSource Facility Services, Inc. and OneSource Franchise Systems, Inc.

## OPINION

Barnes & Robinson Company, Inc. executed two letters of intent, one with OneSource Facility Services, Inc., and the other with its sister company, One Source Franchise Systems, Inc. (collectively OneSource). The intent of the parties was for Barnes & Robinson to purchase janitorial service business assets and then recruit and service OneSource franchisees in the Nashville area.

The letters of intent set out the framework for the parties to negotiate a definitive agreement and expressly provided that all terms were subject to further negotiation and were to be finalized in a definitive purchase agreement. The letters of intent were substantially similar in most respects.

Two identical clauses in the letters of intent are particularly relevant to the issues on appeal. One is a "no liability" clause that reads, in part:

> Except as expressly stated herein, neither party shall have any obligations or liability under this letter of intent to the other party in the event a sale and purchase of the Assets is not completed for any reason whatsoever except for us to return the down payment to you in accordance with the terms of this letter.

The other relevant clause prohibited oral modification of the letters of intent. It provides:

> Except as otherwise provided herein, this letter may be amended or modified only by a writing executed by all of the parties.

Barnes & Robinson alleged in the complaint that the parties continued to negotiate after the parties signed the Letters of Intent and came to an agreement on what protected areas and accounts were to be assigned to Barnes & Robinson. Barnes & Robinson claims it relied on representations by OneSource that Barnes & Robinson would be taking over the business and thus acted based on this representation to Barnes & Robinson's detriment by hiring employees and purchasing needed assets in anticipation of starting business. Prior to closing or the signing of a definitive agreement, OneSource offered Barnes & Robinson terms differing from those previously discussed by the parties.[1] At this point, negotiations between the parties broke down resulting in Barnes & Robinson filing suit against OneSource for breach of contract, breach of the duty to negotiate in good faith and promissory estoppel.[2]

The trial court granted OneSource's motion to dismiss all three claims.[3] It dismissed the breach of contract claim finding that an agreement between the parties was conditioned upon the signing of a definitive written agreement and the parties had not signed a definitive agreement. It dismissed the promissory estoppel claim based upon a finding Barnes & Robinson failed to establish it had reasonably relied on the representations. And finally, the trial court dismissed Barnes & Robinson's good faith negotiations claim upon a finding the parties did not expressly enter into an agreement to negotiate in good faith.

---

[1] Defendant requested $1, 250,000 as the purchase price rather than the $200,000 named in the Letter of Intent and offered a non-protected area rather than a protected area as noted in the Letter of Intent. Defendant also wanted to require Barnes & Robinson to finance the purchase price through either a OneSource affiliate or Carlisle Company.

[2] Initially the Barnes & Robinson also claimed breach of duty of good faith in performance, however, this was not raised on appeal based on an agreement by the parties that this issue is entirely ancillary to the breach of contract claim. The trial court dismissed this claim along with the others in the order.

[3] Defendant also made a motion to dismiss pursuant to Tenn. R. Civ. P. 17 for failure to prosecute in the names of the real parties in interest. The trial court denied the Rule 17 motion to dismiss and that ruling is not on appeal.

Barnes & Robinson appealed contending: (1) there was no condition precedent of a signing of another document before an enforceable contract arose between the parties, (2) facts supporting an agreement to negotiate in good faith were alleged and need not be expressly stated in the letters of intent to exist; and (3) it sufficiently alleged facts to state a claim for promissory estoppel and thus, should be allowed to proceed to trial.

## STANDARD OF REVIEW

The purpose of a Tenn. R. Civ. P. 12.02(6) motion to dismiss is to determine whether the pleadings state a claim upon which relief can be granted. A Rule 12 motion only challenges the legal sufficiency of the complaint. It does not challenge the strength of the plaintiff's proof. *See Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999). In reviewing a motion to dismiss, we must liberally construe the complaint, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. *See Pursell v. First American National Bank*, 937 S.W.2d 838, 840 (Tenn. 1996); *see also Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696-97 (Tenn. 2002). Thus, a complaint should not be dismissed for failure to state a claim *unless* it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. (emphasis added) *See Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Fuerst v. Methodist Hospital South*, 566 S.W.2d 847, 848 (Tenn. 1978). Making such a determination is a question of law. Our review of a trial court's determinations on issues of law is *de novo*, with no presumption of correctness. *Frye v. Blue Ridge Neuroscience Center, P.C.*, 70 S.W.3d 710, 713 (Tenn. 2002); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

## BREACH OF CONTRACT

The trial court dismissed Barnes & Robinson's breach of contract claim based upon its finding that the framework established by the parties under the letters of intent required the parties enter into and sign a definitive written agreement, which the parties did not do. Barnes & Robinson contends the letters of intent did not require a signing of a definitive agreement, but rather that the parties come to a definitive agreement, whether or not documented in writing. Moreover, it contends a definitive agreement was reached. We affirm the ruling of the trial court.

When courts are determining the terms of a contract, they are to ascertain the intent of the parties based on the ordinary and natural meaning of the words used in the instrument. *Guiliano v. Cleo, Inc.,* 995 S.W.2d 88, 95 (Tenn. 1999). If the terms used in an instrument are ambiguous the court must then resort to rules of construction. Terms are not ambiguous, however, merely because the parties disagree as to the interpretation of a given clause. *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.,* 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994). "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1979).

The relevant language incorporated by the parties in the Letter of Intent to Buy Certain Assets and the Letter of Intent to Become Area Representative is not ambiguous. In considering the language by the ordinary and common usage, it is apparent the parties intended, and required, a signed written document. We note several parts of the Letters of Intent in reaching our conclusion. First, the Letters of Intent are riddled with terms indicating the parties intended to "consider" a "proposed purchase" or "contemplated transaction" in anticipation of a final agreement between the parties. Next, both of the Letters of Intent repeatedly refer to a definitive agreement or definitive purchase agreement throughout the letters.

In paragraph two of the letter of intent with OneSource Franchise Systems, the proposed payment plan for the purchase of certain assets provided, "$10,000 will be given as a down payment at the time of the *signing of the letter of intent* and then the remaining $90,000 down payment will be given "upon *signing the definitive purchase agreement*." (emphasis added) The letter of intent with OneSource Facility Services additionally provided that the $10,000 down payment is fully refundable, "if we do not enter into a definitive purchase agreement within 90 days, or sooner as you request." It is evident from the letters of intent that the parties agreed, when they established the framework for negotiations, that there would need to be a signed – written – definitive purchase agreement; otherwise the deal was off and the down payment would be refunded and neither party would be liable to the other.

## DUTY TO NEGOTIATE IN GOOD FAITH

Barnes & Robinson contends OneSource had a duty to negotiate in good faith and failed to do so. The trial court dismissed the claim finding the letters of intent did not require good faith negotiations and, absent an expressed contractual agreement to the contrary, parties are not obligated to negotiate in good faith. We agree with the trial court's finding of fact and conclusion of law.

Parties to a contract owe each other a duty of good faith and fair dealing as it pertains to the performance of a contract. *Wallace v. National Bank of Commerce,* 938 S.W.2d 684, 686 (Tenn. 1996); *Elliott v. Elliott*, 149 S.W.3d 77, 84-85 (Tenn. Ct. App. 2004). Thus, each party to a contract promises to perform its part of the contract in good faith. The purpose of this implied-in-law covenant is two-fold.

> First, it honors the contracting parties' reasonable expectations. *Bayou Land Co. v. Talley*, 924 P.2d 136, 154 (Colo.1996); *Cox v. CSX Intermodal, Inc.*, 732 So.2d 1092, 1097 (Fla. Dist. Ct. App. 1999)(citations omitted). Second, it protects the rights of the parties to receive the benefits of the agreement they entered into. *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995)(citations omitted). *The implied obligation of good faith and fair dealing does not, however, create new contractual rights or obligations*, *nor can it be used to circumvent or alter the specific terms of the parties' agreement.*

*Goot v. Metropolitan Government of Nashville and Davidson County*, No. M2003-02013-COA-R3-CV, 2005 WL 3031638, *7 (Tenn. Ct. App. Nov. 9, 2005)(footnotes omitted)(emphasis added). The extent of the duty to perform a contract in good faith depends upon the individual contract in each case. "In construing contracts, courts look to the language of the instrument and to the intention of the parties, and impose a construction which is fair and reasonable." *TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987). *See Covington v. Robinson*, 723 S.W.2d 643, 645-46 (Tenn. Ct. App. 1986)(determining whether the parties acted in good faith in the performance of a contract, the court must judge the performance against the intent of the parties as determined by a reasonable and fair construction of the language of the instrument); *Bank of Crockett v. Cullipher*, 752 S.W.2d 84, 91 (Tenn. Ct. App. 1988)(holding the parties may by agreement "determine the standards by which the performance of obligations are to be measured").

Tennessee courts, however, have not recognized a duty to negotiate in good faith absent an express contractual agreement to do so. *See, Kandel v. Center for Urological Treatment and Research, P.C.,* No. M2000-02128-COA-R3-CV, 2002 WL 598567 (Tenn. Ct. App. April 17, 2002). In that matter, Dr. Kandel argued that a contract to "negotiate in good faith" is enforceable in Tennessee, and that the facts of his case supported a finding the defendants breached their duty under his employment agreement to negotiate in good faith. Dr. Kandel further contended that every contract is subject to an implied covenant of reasonable and good faith even where the contract does not contain a specific provision to "negotiate in good faith," citing two cases in which marital dissolution agreements requiring the parties to "negotiate in good faith" potential modifications relating to child support, alimony, and property allocation were enforced, *Bruce v. Bruce*, 801 S.W.2d 102, 103-106 (Tenn. Ct. App. 1990) and *Threadgill v. Threadgill*, 740 S.W.2d 419, 424 (Tenn. Ct. App. 1987).[4]

The defendant in *Kandel* argued "the current jurisprudence indicates an unwillingness to enforce an agreement to 'negotiate in good faith'" relying on *Engenius Entertainment, Inc. v. Herenton*, 971 S.W.2d 12 (Tenn. Ct. App. 1997). In *Engenius*, the plaintiff, a developer, was selected by the defendants to develop leasehold space in a public arena to be developed in downtown Memphis. The defendants' written Request for Proposals provided that, "upon the selection of a developer, the specific rent structure would be negotiated between the parties." *Id.* Later, the defendants demanded a $50,000 non-refundable fee from the developer for the right to negotiate a lease with the defendants. The developer refused to pay the fee following which the defendants terminated negotiations. The developer then filed suit alleging breach of contract, claiming the

---

[4]In *Bruce*, the husband argued that the agreement to negotiate was an invalid "agreement to agree." That argument was rejected by the *Bruce* court because the marital dissolution agreement "is not an agreement to agree in the future. A 'contract may provide for modification, and contracts which provide for subsequent changes therein are not unusual.'" *Bruce*, 801 S.W.2d at 106. In *Threadgill*, the parties' duty to negotiate modifications in the original marital dissolution agreement arose if the parties experienced a change in circumstances warranting such a modification. This court determined that the parties' circumstances had not changed so as to trigger any obligation to negotiate. *Threadgill*, 740 S.W.2d at 424. Consequently, the *Threadgill* court did not reach the issue of whether the provision to "negotiate in good faith" was enforceable.

defendants breached their "obligation to deal with [plaintiff] fairly and in good faith to proceed with the development." *Id*. at 17.

On appeal, this court held that the Request For Proposals requiring the parties to negotiate was not an enforceable agreement, reasoning that when parties agree to prepare and execute a final written agreement, "it is necessary that agreement shall have been expressed on all essential terms that are to be incorporated in the document. . . . The so-called 'contract to make a contract' is not a contract at all." *Id*. at 17-18[5] (quoting 1 ARTHUR L. CORBIN, ET AL., CORBIN ON CONTRACTS § 2.8, at 133-34 (Rev. ed. 1993)(footnotes omitted))."

Barnes & Robinson asks that we infer from the letters of intent a duty on OneSource's part to negotiate in good faith to attain a definitive purchase agreement. We find no basis, in fact or in law, upon which to infer such a duty. As Tennessee does not recognize such a duty absent an express contractual agreement, OneSource had no affirmative duty at law or under contract to negotiate in good faith.

## PROMISSORY ESTOPPEL

Barnes & Robinson alleges in the complaint that representatives of OneSource authorized Barnes & Robinson to notify the customers and vendors that Barnes & Robinson would be running the business. Based on that representation, Barnes & Robinson notified the customers, hired employees and purchased assets to operate the business to Barnes & Robinson's detriment. Barnes & Robinson argues that these allegations form the basis of an enforceable non-contractual promise. The trial court held the complaint failed to state a claim upon which relief could be granted because the letters of intent provided the parties shall have no liability in the event the transaction was not completed for any reason and, therefore, reliance by Barnes & Robinson on the representations of representatives of OneSource was not reasonable. We find no error with the ruling by the trial court.

As this issue comes before us upon a motion to dismiss pursuant to Tenn. R. Civ. P 12.02(6), we accept as true Barnes & Robinson's allegations that representatives of OneSource informed it that it could notify customers it was taking over the accounts and that Barnes & Robinson incurred expenses by hiring employees and purchasing equipment. We are not, however, required to accept as true Barnes & Robinson's conclusory statements that its reliance thereon was reasonable or that injustice would occur if we refused to enforce the promise because Barnes & Robinson's conclusions are distinct from the factual allegations we are required to accept under Rule 12. *See Rennick v. O.P.T.I.O.N. Care, Inc.* 77 F.3d 309, 317 (9th Cir. 1996) (holding "In light of the unequivocal non-

---

[5]The *Engenius* court cited cases holding that agreements to "negotiate in good faith" are enforceable under certain circumstances. *See*, for example, *Arcadian Phosphates, Inc. v. Arcadian Corp*., 884 F.2d 69, 72 (2d Cir.1989) (applying New York law and describing two types of preliminary agreements, one where the parties agree to later formalize a contract about which there has been complete agreement on all of the essential issues, and the other where the parties have committed themselves to some of the major terms, but other essential terms remain to be negotiated); *Teachers Insurance & Annuity Association v. Tribune Co.*, 670 F.Supp. 491, 498 (S.D.N.Y. 1987) (holding that under New York law the existence of open terms in the second type of preliminary agreement is not fatal).

binding language in the letter of intent, reliance on the existence of a contract was unreasonable as a matter of law."); *see also Omnitech International, Inc. v. Clorox Co.*, 11 F.3d 1316, 1330 (5th Cir. 1994) (refusing to look past the written agreement in a letter of intent and finding no error with the trial court's holding that "any reliance was unreasonable as a matter of law."); *see also Doll v. Grand Union Co.*, 925 F.2d 1363, 1373 (11th Cir. 1991) (holding there was no basis for the contention that the plaintiffs' reliance was reasonable, placing special emphasis on the parties' letter of intent which conditioned agreement on the execution of a formal commercial lease.)

Promissory estoppel is based on "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Calabro v. Calabro*, 15 S.W.3d 873, 878 (Tenn. Ct. App. 1999)(citing *Amacher v. Brown-Forman Corp.*, 826 S.W.2d 480, 482 (Tenn. Ct. App.1991) (quoting Restatement (Second) of Contracts § 90). There are, however, limits to the application of promissory estoppel:

> The reason for the doctrine is to avoid an unjust result, and its reason defines its limits. No injustice results in refusal to enforce a gratuitous promise where the . . . *promisee's action in reliance was unreasonable or unjustified by the promise*. The limits of promissory estoppel are: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; (3) *the promisee must have acted reasonable in justifiable reliance on the promise as made*. (emphasis added)

*Calabro*, 15 S.W.3d at 879 (quoting *Alden v. Presley,* 637 S.W.2d 862, 864 (Tenn. 1982)(citing L. SIMPSON, LAW OF CONTRACTS § 61 (2d ed.1965)).

An important component of the doctrine of promissory estoppel is "detrimental reliance" because the plaintiff must show not only that a promise was made, but also that the plaintiff *reasonably relied* on the promise to his detriment. (emphasis added) *Engenius Entertainment, Inc. v. Herenton*, 971 S.W.2d at 19-20 (citing *Foster & Creighton Co. v. Wilson Contracting Co.*, 579 S.W.2d 422, 427 (Tenn. Ct. App. 1978)). No injustice arises in the refusal to enforce a promise where either the loss induced is negligible or the promisee's reliance is not reasonable. *Smith v. Harriman Utility Bd.,* 26 S.W.3d 879, 886 (Tenn. Ct. App. 2000).

Tennessee does not liberally apply the doctrine of promissory estoppel. To the contrary, it limits application of the doctrine to exceptional cases. *Shedd v. Gaylord Entertainment Co.*, 118 S.W.3d 695, 700 (Tenn. Ct. App. 2003) (limiting the application to "exceptional cases where to enforce the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud"). Based upon the record before us, we find, as the trial court did, that Barnes & Robinson's reliance was not reasonable in light of the parties' agreement in the letters of intent that "the parties shall have no liability in the event the transaction was not completed for any reason whatsoever" and completion of the transaction required a signed definitive agreement. Thus, based upon the limitations clearly stated in the letters of intent, it was not reasonable for Barnes &

Robinson to hire employees and incur expenses as it did in reliance upon oral representations. Moreover, no injustice results from giving effect to the terms of the letters of intent the parties negotiated. To the contrary, the injustice would result by ignoring the parties' agreement. The same issue was addressed in *Doll v. Grand Union Co.,* 925 F.2d 1363, 1373 (11th Cir. 1991), where like here the parties had entered into a letter of intent requiring a written agreement. In that case the court reasoned: "To allow a promissory estoppel claim to proceed in this context would be to allow equity to denigrate a term expressly bargained for between the parties." *Grand Union Co.,* 925 F.2d at 1373.

To allow Barnes & Robinson to prevail on its claim of promissory estoppel would denigrate the expressly bargained terms it and OneSource agreed upon in the letters of intent. Accordingly, we find as the trial court did that no injustice arises from holding Barnes & Robinson to the terms of the letters of intent.

### IN CONCLUSION

The judgment of the trial court is affirmed in all respects and this matter is remanded with costs of appeal assessed against Barnes and Robinson Company, Inc.

_____
FRANK G. CLEMENT, JR., JUDGE