IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 5, 2010 Session

## JESS R. OGG, JR. v. CAMPBELL COUNTY BOARD OF EDUCATION

Appeal from the Chancery Court for Campbell County
No. 08-001     Billy Joe White, Chancellor

No. E2009-02147-COA-R3-CV-FILED-SEPTEMBER 20, 2011

In this age discrimination and breach of contract case, Jess R. Ogg, Jr. ("Employee") filed suit against his former employer, Campbell County Board of Education ("Employer"), alleging that Employer had violated the Tennessee Human Rights Act by terminating him because of his age and replacing him with a younger, less-qualified teacher. Employer argued that it had legitimate, non-discriminatory reasons for terminating Employee and hiring a suitable replacement. Following a bench trial, the court found that Employer had engaged in age discrimination and breached its contract and that Employee was entitled to recover his lost salary. Employer appeals. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

John C. Duffy, Knoxville, Tennessee, for the appellant, Campbell County Board of Education.

David H. Dunaway, LaFollette, Tennessee, for the appellee, Jess R. Ogg, Jr.

## OPINION

## I. BACKGROUND

Employee, who was 69 years old and a tenured teacher at Campbell County High School ("CCHS") prior to his termination, was initially hired in 1988 as a janitor for the

school system. He worked as a janitor until 1992, when he began teaching automotive technology after he applied for a teaching position at CCHS. He was initially granted a one-year probationary trade shop license with the following three areas of endorsement: automotive services, body and fender, and mechanics. Approximately one year later, Employee obtained his Graduate Equivalency Diploma[1] ("GED"), and shortly thereafter, he obtained a three-year apprentice teacher trade shop license with the same three areas of endorsement. Approximately three years later, Employee obtained his professional occupational education license with the same three areas of endorsement. His license was valid for ten years, expiring on August 31, 2006.

Employee received an offer of employment by letter each year that he was employed by Employer. These letters reflected that Employee was offered re-employment, "subject to: adequate funding, proper certification and qualifications, program requirements, and student enrollment." On April 12, 2006, Employee received his offer letter for the 2006-2007 school year and accepted the offer by signing the letter and returning it to Employer. A few days after he received the offer letter, Employer advised Employee that he needed to renew his license and that two of his National Institute for Automotive Service Excellence ("ASE") certifications were set to expire on June 30, 2007.[2] In addition, Employee's body and fender endorsement had already expired prior to the 2006-2007 school year. In order to renew his license, Employee needed to maintain all three of his certifications with the ASE in each area that he had been endorsed when he originally obtained his license. Employee was unable to pass the test indicating that he was certified in collision repair, which would have fulfilled the body and fender endorsement that had expired. Thus, he lacked one ASE certification in order to renew his license for the 2006-2007 school year.

Realizing that he had not fulfilled the requirements for maintaining his license, Employee spoke with Employer and asked if he could remove the body and fender endorsement from his license. Employer inquired with the State of Tennessee Department of Education and received a letter from Ralph Barnett, Assistant Commissioner of that department. Mr. Barnett advised Employer that Employee's endorsements must be renewed and could not be removed even if Employee did not intend to teach a class in the area of that endorsement. Mr. Barnett also advised Employer that Employee's license had expired but that "[t]here [wa]s a provision by licensure that allow[e]d a permit to be issued, at the request of the school system, for a teacher whose license ha[d] expired." Mr. Barnett warned

---

[1] A form in the record indicated that Employee had obtained a Bachelor of Science from the University of Tennessee at Knoxville. A copy of this degree was not included in the record.

[2] His records from ASE reflected that he had passed the tests for certification in brakes and suspension and steering but that these certifications were set to expire on June 30, 2007.

Employer that Employee's teaching without a license "could affect students receiving credit for their fall semester course work as well as the possibility of state and or federal funds being withheld."

Approximately two weeks later, on January 3, 2007, Employer fired Employee, advising him that he was no longer "eligible to teach for the Campbell County School System or for the State of Tennessee" and that he did not "have the correct employment standard to teach Automotive Technology." The letter from Mr. Barnett was attached to Employee's termination letter. Employer offered Employee's position to Dwayne Lee, a 34-year-old teacher who had a valid professional teacher's license and an ASE certification in engine repair but did not have a professional occupational education license, which was necessary to teach automotive technology. Mr. Lee obtained an apprentice occupational education license with a mechanics endorsement on January 12, 2007. Employee filed suit, alleging age discrimination and breach of contract.

At trial, Employee's counsel read portions of Sharon Ridenour's deposition into the record. Ms. Ridenour was Employer's Career and Technical Education Director. She stated that Dr. Judy Blevins, the Director of Schools for Campbell County, would have been responsible for issuing Employee's contract each year and that she told Dr. Blevins that Employee's license was set to expire in August 2006. She admitted that Employee's endorsement in body and fender was unnecessary because that class had not been offered since 1996. She remembered that they had received a letter from Mr. Barnett in 2006 in which he told them that Employee could obtain a permit even though his license had expired. She said that Dr. Blevins did not attempt to obtain a permit for Employee because of the "rules of the permit." She said that Employee's replacement, Mr. Lee, was teaching at LaFollette Middle School ("LMS") when he was asked to replace Employee. She related that Mr. Lee had ASE certification in one area and that he had three years to obtain his industrial certification and get his professional occupational education license.

Portions of Dr. Blevins's deposition were also read into the record. Dr. Blevins testified that after she received the letter from Mr. Barnett advising her of the option to obtain a permit, she called Mr. Barnett and asked him whether his statement in the letter meant that they could request a permit. She said that Mr. Barnett told her that he would not approve a permit for Employee. She was told "that in order to get a permit and it be granted that we would have to advertise and show that we had no one, absolutely no one licensed or could not find anybody" to fill the position. She said that instead of allowing Employee to finish the school year, they decided to terminate him because they were worried that students would not receive credit if they were taught by an unlicensed teacher. She admitted that the students who had taken a class with Employee after his license had expired were not penalized or denied credit for that class.

-3-

When asked if she was aware that Darrell Justin Chapman and Michael Allman Sanders, who were much younger than Employee, had received waivers, Dr. Blevins stated that she knew when waivers and permits had been given because they had to request the waiver or permit. She said that the waivers[3] that had been given to Mr. Chapman and Mr. Sanders were given to them because they had received their college degrees but had not yet received their license. She noted that their applications had to be approved by the University of Tennessee and that they had to agree to "get into a course of study in [their] field in order for the state department to give them a waiver." She claimed that Employee's age did not play a role in the decision to terminate him.

Gary Seale, who was the principal of CCHS at the time of Employee's termination, stated that Employee was the oldest teacher at the school and that Mr. Lee was "substantially younger" than Employee. He said that Employee's predecessor, Bruce Ferguson, had taught auto body repair until he was terminated and replaced by Michael Ridenour, who was younger. He related that the course was abolished for environmental reasons after Mr. Ferguson was terminated.

Mr. Seale testified that he currently taught at LMS because Employer had dismissed him as principal. He said that he was replaced by a "[s]ignificantly younger" man after having served as principal for four years.[4] He stated that he was familiar with the licensing requirements and that he knew the regulations regarding temporary licenses and certifications for those who did not have a teacher's license. He indicated that an Interim B license allowed a person who was unlicensed to teach for one year. He said that the Director of Schools had the ability to grant permission for a teacher to receive an Interim B license but that in order for an employee to have received such a license, the employee would have had to submit an application. He noted that he believed that Employee would have been eligible to receive such a license. He testified that after they learned that Employee's license was going to expire, Dr. Blevins told him that "she would do anything and everything that she could to help." He said that despite her assurances, Dr. Blevins asked him to encourage Employee to quit "because she did not want to have to do what she was going to do."

Mr. Seale reported that Mr. Lee did not have any experience, while Employee was "top notch quality" and a "great overall teacher and person." He said that Employee's certification for the course that he taught at CCHS was not set to expire until June 30, 2007. He claimed that in order to teach without a license, Employee only needed a permit.

_____

[3]The record indicates that these teachers received an Alternative Type II license. This type of license was only available for those with college degrees who have not ever received a teaching license.

[4]Mr. Seale was 59 years old at the time of the trial and had a pending lawsuit against Employer.

Mr. Seale testified that he knew of several teachers who were younger than Employee and had been granted permission to teach without a license.[5] He said that it did not "make any sense" to terminate Employee in the middle of the year when he had been offered re-employment for the year. He noted that after Dr. Blevins's first or second county in-service training, Dr. Blevins told him that she wanted to bring "younger blood, new teachers into the system" and "get the older teachers out because of new technology and new expertise in teaching." He opined that she did not think "there was a place for the older experienced teachers."

On cross-examination, Mr. Seale admitted that in order to obtain a permit, "that the director and board of education must certify that the school system is unable to secure a qualified teacher with a valid license for the type and kind of school in which a vacancy exists." He explained that a waiver to teach may be granted for those who have a license but are not certified to teach in a certain area. He said that even if a teacher did not have a license, they may be granted permission to teach through a waiver while they attempt to obtain the license. He insisted that a bachelor's degree was not necessary to obtain an Interim B license because the forms did not mention the requirement of obtaining a college degree, while the forms for the Alternative A, C, D, and E teacher's licenses required proof of a college degree. In any event, he said that Employee had attended several university classes and had obtained a bachelor's degree. He admitted that a copy of Employee's license information indicated that Employee did not have a college degree.

Clayton Ray, the Director of Secondary Education, testified that he supervised curriculum instruction for Campbell County. He stated that in order to obtain a waiver or permit for an unlicensed teacher to teach, they must post an advertisement in the newspaper, upload an advertisement on the Internet, and send letters to colleges and universities requesting information regarding licensed teachers. He said that if their efforts did not produce a licensed, certified teacher, then they could ask the commissioner to grant a waiver or permit for the unlicensed person to teach for one year. He said that when a waiver or permit is granted, they must certify that they have advertised the position and were unable to find a licensed, certified teacher.

Mr. Lee testified that prior to accepting the position at the high school, he taught a small engine class for the special education students at LMS. He said that in his class, his students rebuilt car engines. He related that on January 5, 2007, Ms. Ridenour approached him and asked if he would be interested in teaching automotive technology at the high school. He did not know whether the job had been advertised. He said that he had ASE certification in engine repair and a valid professional teaching license but that he had to apply

---

[5]The details surrounding these licenses and the respective teacher's qualifications were discussed.

for an occupational education license in order to teach the class at the high school. He stated that because he had advanced degrees, he only had to submit paperwork in order to obtain the license. He noted that before he could apply for the license, he had to have a job offer.

Ms. Ridenour testified that in order to obtain an occupational education license, the person must fill out an application after they have been hired. She said that the license is only available to individuals who have a GED and have worked in that particular area for five of the preceding eight years. Once they have been granted the license, they must complete 18 hours of college courses and obtain the necessary certifications before they are eligible for a 10-year occupational education license. She said that she could only remember one teacher who had been granted a waiver for two years because that teacher could not pass her registered nursing test. Relative to Employee, she noted that when he was hired, he had to obtain the necessary ASE certifications in order to obtain the ten-year license and that he chose to add body and fender as an endorsement on his license. She said that once he added the endorsement, he could not remove it. She stated that she was not aware of anyone who had let their license expire and could not obtain the necessary certifications to renew the license. She admitted that she sent him a contract for the 2006-2007 school year but said that the contract was dependent upon his completion of the necessary certifications for maintaining his license.

Relative to Mr. Lee, Ms. Ridenour said that she knew of him because she had read about his special education engine repair class in the newspaper and because he was teaching at the middle school. She testified that she did not believe Employer could ask for a permit because Mr. Lee, a licensed teacher, was available to teach Employee's courses. She claimed that Employee's age did not play a role in the decision and that she was not aware of his age until after they discovered the licensing problem. She stated that Dr. Blevins never said anything about getting rid of the older teachers and that regardless of their age, Dr. Blevins only "wanted the best teachers for [the] school system."

Following the presentation of the above evidence, the trial court found that Employer breached its contract with Employee by failing to make an effort to obtain a waiver that would allow Employee to teach. The court further found that Employer's failure to secure a waiver "was clearly discriminatory against [Employee] based upon his age and that [Employee] was terminated for no other reason." In so finding, the court stated, "It was obvious that the school department did not advertise in the newspapers or on the [i]nternet and had someone picked for this job." The court found "that the director of school's actions and statements amount to clear age discrimination and that he was discharged for no other reason."

Employer filed a timely appeal.

-6-

## II. ISSUES

We consolidate and restate the issues raised by Employer as follows:

A. Whether the trial court erred in finding that Employer had engaged in age discrimination.

B. Whether the trial court erred in finding that Employer had breached its contract with Employee.

## III. STANDARD OF REVIEW

On appeal, we review the decision of a trial court sitting without a jury de novo upon the record, accompanied by a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

## IV. DISCUSSION

### A.

Employer contends that because Employee's license had expired, Employee was not qualified for the position, thereby preventing him from establishing his prima facie case of age discrimination. Employer asserts that Employee was not eligible for a permit or an Interim B license. Employee responds that Employer engaged in age discrimination and that its stated reason for firing him was pretextual. Employee contends that he was qualified for the position and that his failure to maintain his license was not a sufficient reason for his termination. Because he maintained his certifications for the courses that he actually taught and when Employer on his behalf, could have requested a permit for him to teach.

"In an age discrimination suit, the ultimate issue is whether age was a determining factor in the employer's decision that adversely affected the employee." *Brenner v. Textron Aerostructures, A Division of Textron Inc.*, 874 S.W.2d 579, 583 (Tenn. Ct. App. 1993). In

order to prevail in an age discrimination suit, the employee may prove his or her case using the direct or indirect method of proof. *Wilson v. Rubin*, 104 S.W.3d 39, 49 (Tenn. Ct. App. 2002). The direct method "focuses on the motivation of the employer responsible for the contested decision" and "consists of evidence of an employer's conduct or statements which, if believed, requires a conclusion that unlawful discrimination was a substantial motivating factor for the employer's actions." *Id.* The conduct or statements must be made by those "directly involved in the decision-making process" and "must relate to the particular employment decision being challenged." *Id.*

In order to prevail in an age discrimination suit using the indirect method of proof, the employee must first establish a prima facie case of discrimination by proving that "(1) he was a member of the protected class; (2) he was subjected to [an] adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a younger person," namely someone outside of the protected class. *Brenner*, 874 S.W.2d at 584 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). In cases of age discrimination, the protected class consists of "individuals who are at least forty (40) years of age." Tenn. Code Ann. § 4-21-101(b). If an employee has established a prima facie case of discrimination, the burden of production shifts to the employer to "articulate a legitimate non-discriminatory business reason for the challenged employment action." *Dennis v. White Way Cleaners, L.P.*, 119 S.W.3d 688, 694 (Tenn. Ct. App. 2003) (citing *McDonnell Douglas*, 411 U.S. at 802). Once an employer has articulated such a reason, "then the burden shifts again to the [employee] to present some evidence that the [employer]'s reasons are pretextual." *Id.* (citing *Versa v. Policy Studies, Inc.*, 45 S.W.3d 575 (Tenn. Ct. App. 2000)). In establishing that the reason was pretextual, the employee may show that "the employer was more likely than not motivated by a discriminatory reason" or that "the employer's explanation was not credible." *Barnes v. Goodyear Tire and Rubber Co.*, 48 S.W.3d 698, 708 (Tenn. 2000), *abrogated on other grounds by Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777 (Tenn. 2010).

Here, Employee could not establish his case using the direct method of proof because the discriminatory statements allegedly spoken by Dr. Blevins did not relate to the challenged employment decision. *Wilson*, 104 S.W.3d at 49. Thus, Employee was tasked with establishing a prima facie case of age discrimination using the indirect method of proof. Employee was 69-years-old at the time of his termination, thereby qualifying him as a member of the protected class. Employee was terminated and replaced by a younger person, Mr. Lee, who was 34-years-old when he was hired. Employee was also qualified for the position from which he was fired as evidenced by his valid ASE certifications. Other than the fact that his license had expired and could not immediately be renewed because of his inability to maintain an unnecessary certification, no evidence was offered that Employee

was incapable of satisfactorily completing the school year as the automotive technology instructor.

Moreover, Employer could have sought and obtained a permit from the state for Employee to teach.[6] Indeed, the state could have easily issued a permit for Employee if Employer had met the following requirements:

> 1. A director of schools must state intent to employ and indicate the position to be held by the applicant.
>
> 2. The school system must indicate that it is unable to obtain the services of a licensed teacher for the type and kind of school in which a vacancy exists.
>
> 3. The school system must have posted the position, advertised in appropriate media; and listed the position on a state or national Internet website.

Tenn. Comp. R. & Reg. 0520-2-04-.03(4)(a). While the rules state that this type of permit may only be awarded one time and "only if the applicant holds a bachelor's degree," the rule specifically provides that "[a] bachelor's degree is not required for an applicant in occupational education." Tenn. Comp. R. & Reg. 0520-2-04-.03(4)(b). Here, Employee had never received such a permit and would have been an "applicant in occupational education." Employer argued at trial that Employee had received such a permit when he was initially hired. The record belies this argument. When Employee was hired, he was initially offered a one-year, probationary trade-shop license, not a permit. Thus, he was eligible to receive a permit. At trial, Employer contended that they could not certify that they were unable to secure a qualified teacher with a valid license because Mr. Lee was available. While Mr. Lee had a valid teacher's license, he did not have the necessary license to teach automotive technology at CCHS. Indeed, he obtained a temporary license *after* he had been offered Employee's job. Additionally, Employer did not attempt to obtain a permit for Employee. The testimony at trial indicated that after learning the requirements for obtaining a permit, Employer simply fired Employee. Accordingly, we conclude that Employee established a prima facie case of age discrimination.

Because Employee provided a prima facie case of age discrimination, at issue here is whether Employer's stated reasons for the challenged employment action were pretextual.

---

[6]While the availability of permits, waivers, and Interim B licenses were discussed, we will not address the distinction and availability of a waiver or an Interim B license because the availability of a permit was evident. Additionally, Employee never applied for an Interim B license. Some witnesses testified that a waiver and permit were the same, while other testimony indicated that the two were uniquely different.

Employer provided the following three reasons for its termination of Employee: the expiration of Employee's license, the possibility that students would not receive credit if taught by an unlicensed teacher, and the possibility that its continued employment of an unlicensed teacher could lead to the withholding of state and federal funding. Employee argues that the reasons were pretextual as evidenced by Dr. Blevins's statement, the fact that waivers and permits had easily been given to younger teachers, and the fact that Employee continued teaching even after his license had expired. Employee asserts that Employer was attempting to replace the old teachers with newer, younger teachers and that Employer simply took advantage of the untimely expiration of his license to fulfill its agenda.

While Dr. Blevins's statements concerning her desire to hire younger teachers "would not suffice as direct evidence of discriminatory intent using the direct method of proof," these statements "provide a framework" for considering Employer's actions after Employee's license had expired. *Wilson*, 104 S.W.3d at 55. Dr. Blevins was advised by Mr. Barnett that she could apply for a permit for Employee to teach. Dr. Blevins testified that Mr. Barnett told her that he would not approve a permit, absent her certification that they could not find a suitable, licensed replacement after having advertised the position. We acknowledge that Dr. Blevins found a suitable replacement in Mr. Lee; however, Mr. Lee had to apply for a temporary license to teach the classes. Moreover, Dr. Blevins offered the position to Mr. Lee within days of firing Employee and did not *attempt* to obtain a permit for Employee. Dr. Blevins's actions, coupled with her discriminatory statements, support the conclusion that Employer engaged in age discrimination and that its stated reasons for firing Employee were pretextual. Accordingly, we uphold the trial court's finding that Employer had engaged in age discrimination and that Employee was entitled to his lost salary.

B.

Employer contends that the trial court erred in concluding that it breached its contract with Employee because Employee failed to meet a condition precedent of the contract when he allowed his license to expire, thereby invalidating the contract. Employer also asserts that the contract was invalid as a matter of law. Employee responds that the offer of employment was not conditioned upon his maintenance of the license because Employer allowed him to work after his license had expired. Employee contends that Employer violated the implied contract term of the duty of good faith and fair dealing.

The cardinal rule of contract interpretation is that the court "must attempt to ascertain and give effect to the intent of the parties." *Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn. 2005). In attempting to ascertain the intent of the parties, the court must examine the language of the contract, giving each word its usual, natural, and ordinary meaning. *See Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996). The "court's initial task in

construing a contract is to determine whether the language of the contract is ambiguous." *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889-90 (Tenn. 2002). Where the language of a contract is clear and unambiguous, its literal meaning controls the outcome of the dispute. *Planters Gin Co.*, 78 S.W.3d at 890. However, an employment contract, like all contracts, "impliedly provides for good faith and fair dealing between the parties." *Williams v. Maremont Corp.*, 776 S.W.2d 78, 81 (Tenn. Ct. App. 1988).

The letter offering Employee a position at the school for the 2006-2007 year provided,

April 12, 2006

Dear Tenured Employee:

On behalf of the Campbell County Schools, you are being offered re-employment for the 2006-2007 school year. This offer is subject to: adequate funding, *proper certification and qualifications*, program requirements, and student enrollment.

Please indicate in the space provided if you accept or reject this employment and return to this office no later than May 1, 2006.

Failure to hear from you will indicate that you are not interested in continued employment with Campbell County Schools.

(Emphasis added). Employee accepted the terms of the offer by signing the form and returning it to Employer. This contract, in the form of the letter offer of re-employment, is the only evidence offered at trial of a binding agreement between Employer and Employee.

While Employee was certainly qualified to teach his courses at CCHS, he lacked the requisite certifications in the form of a valid license to teach for the entirety of the 2006-2007 school year. Indeed, his license expired on August 31, 2006. The language of the contract was clear and unambiguous that Employee needed to possess the proper certifications, necessarily implying that he needed to have a valid license.

On April 19, 2006, Employee received a fax directing him to renew his license. When Employee failed to renew his license before the start of the 2006-2007 school year, Employee was not prohibited from teaching. Instead, Employee was given the opportunity to renew his license and took multiple tests to obtain the certifications necessary to fulfill the licensing requirements. Employer spoke with Mr. Barnett on Employee's behalf regarding the expiration of the license but declined to seek a permit for Employee to continue teaching for

the remainder of the school year. Employer did not give Employee any indication until January 2007, when he was notified that he no longer held a position at the school, that he could possibly lose his position for the remainder of that year.

We must first note that Tennessee Code Annotated section 49-5-101(a) provides,

> No person shall be employed as principal, teacher, or supervisor of any public elementary or high school by any local school district, or receive any pay for such services out of the public school funds of the local school district until the person presents to the director of schools a valid license as prescribed in this part. It is unlawful for any board of education to issue any warrant or check to such persons for services as principal, teacher or supervisor until the person has presented for record a license valid for the *term of employment*.

(Emphasis added). However, especially concerning in this case is the fact that Employee was unable to renew his license because he lacked one certification that was not relevant or even necessary for the classes that Employee taught. We believe that Employer violated the implied covenant of good faith and fair dealing implicit in every employment contract. We acknowledge that this implied covenant may not be used to create new contractual obligations or to alter the terms of a contract. *Barnes & Robinson Co., Inc. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 642-43 (Tenn. Ct. App. 2006) (quoting *Goot v. Metro. Gov't of Nashville and Davidson County*, No. M2003-02013-COA-R3-CV, 2005 WL 3031638, at *7 (Tenn. Ct. App. Nov. 9, 2005)). We believe, as relevant to this case, that this covenant was applicable and should be applied given the circumstances of this case. Here, Employee's contract was dependant upon his maintenance of his license, and Employer had at its disposal a possible solution to Employee's unique licensing problem. Employer could have attempted to obtain a permit for Employee to teach and was advised by the Assistant Commissioner of the Tennessee Department of Education on how to obtain such a permit. Instead, Employer promptly terminated Employee. Accordingly, we conclude that Employer breached its contract with Employee by ignoring the implied covenant of good faith and fair dealing.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the cause is remanded for such further proceedings as may be necessary. Costs of this appeal are taxed to the appellant, Campbell County Board of Education.

_____
JOHN W. McCLARTY, JUDGE