NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0108n.06

**Case No. 20-5954**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| CHERRY DAVIDSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| ARLINGTON COMMUNITY SCHOOLS | ) | DISTRICT OF TENNESSEE |
| BOARD OF EDUCATION; | ) | |
| SUPERINTENDENT TAMARA MASON, | ) | |
| | ) | |
| Defendants-Appellees. | ) | O P I N I O N |

**FILED**
Mar 01, 2021
DEBORAH S. HUNT, Clerk

BEFORE: COLE, Chief Judge; STRANCH and THAPAR, Circuit Judges.

COLE, Chief Judge. Cherry Davidson brought this action under 42 U.S.C. § 1983 against Arlington Community Schools ("ACS") Board of Education (the "Board") and ACS superintendent Tamara Mason, asserting she was unlawfully terminated for exercising her First Amendment rights. She also pleaded, pertinent to this appeal, a state-law claim for breach of the duty of good faith and fair dealing in connection with her termination. The district court granted summary judgment in favor of defendants and issued a separate order denying Davidson's motion to amend her complaint. Davidson appeals both decisions. For the reasons below, we affirm.

## I. BACKGROUND

Plaintiff Davidson was principal of Donelson Elementary School ("Donelson"), one of the four schools that form the Arlington Community Schools district, from the 2014–2015 school year through the 2017–2018 school year. During that time period, Mason was the superintendent for ACS and Davidson's immediate superior.

Davidson's performance as principal elicited mixed feelings from her colleagues. Some teachers expressed satisfaction with Davidson's leadership, noting that she was professional, fair, and had high expectations. Donelson earned several awards under Davidson's leadership, including the National Blue Ribbon award, a national award given to certain high-performing schools. Others told a different story. Teacher surveys, exit interviews, and parent complaints revealed a culture of fear, mistreatment, and intimidation at Donelson. And, when compared with other schools in the ACS district, teacher turnover at Donelson was markedly high.

At the end of the 2017–2018 school year, on May 24, 2018, Davidson was demoted. Mason advised Davidson that her contract—which expired on June 30, 2018—would not be renewed and that she would be reassigned to a teaching position. Mason noted she had based her decision on teacher surveys, end-of-the-year interviews, exit interviews, complaints from parents, and the number of teachers who had resigned during Davidson's tenure.

Davidson claims she was reprimanded for statements she made regarding a proposed change to Donelson's school mascot, the Bulldogs. Specifically, in the Spring of 2018, Mason assembled several committees to create a five-year strategic plan for ACS. One committee chairman told Mason that his committee recommended that all four schools in the ACS district have the same mascot, the Tigers. Because the change would impact Donelson, Mason asked him to discuss the change with Davidson, who disagreed with him. Mason then spoke personally with

Davidson about the proposed mascot change and suggested that she present her view to ACS Board members. When Davidson indicated she would not contact the Board without Mason's permission, Mason invited Davidson to attend a Board work session.

At the work session, Davidson stated she had opened Donelson and polled parents and kids to pick the "Buddy the Bulldog" mascot, that Buddy had "become the fabric of our culture" and a source of "pride," and concluded her presentation by saying, "that's my plea. . . . I would prefer and I feel like my staff would prefer that you just leave us as bulldogs." (Mason Dep., R. 25-19, PageID 800–05.) Mason then told the Board she could "live with it either way" and that "at this point our strategic plan should just reach specific[s] to the middle school. And if the board at a later date wants to look at it, but right now, I would say the focus should be on the middle school. That would be my recommendation." (*Id.* at PageID 806.) The Board agreed to keep Donelson's bulldog mascot. At her deposition, Davidson noted that she had not said anything critical of Mason during the work session because "Mason was my boss. I was not going to be insubordinate." (Davidson Dep., R. 42-2, PageID 1503–04.) She also stated that Mason had not said anything to suggest she was angry at her for her position on the mascot, but she believed Mason was visibly upset.

As a result of these events, Davidson sued Mason and the Board in state court, alleging a First Amendment retaliation claim under 42 U.S.C. § 1983 and state-law claims for negligence and breach of the duty of good faith and fair dealing. Defendants removed the case to federal court. After the close of discovery, defendants moved for summary judgment. Once summary judgment briefing was completed, Davidson filed a motion for leave to amend the complaint in order to add a new claim.

The district court denied the motion to amend because Davidson filed it almost one year after the deadline to file amended pleadings without adequate justification and because permitting such a late amendment would prejudice defendants. The district court then granted summary judgment for defendants. On Davidson's First Amendment claim, the court determined that her speech was not constitutionally protected because she spoke at the work session as a public employee, not as a private citizen. The court also rejected Davidson's contract-related, state-law claims. This timely appeal of both orders followed.

## II.    ANALYSIS

### A.  Standard of review

We review de novo the district court's grant of summary judgment. *Mayhew v. Town of Smyrna*, 856 F.3d 456, 461 (6th Cir. 2017). "Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(a)). We must view all the evidence in light most favorable to the nonmoving party, "drawing 'all justifiable inferences' in [her] favor." *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The central question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* (quoting *Anderson*, 477 U.S. at 251–52). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The denial of a motion for leave to file an amended complaint is reviewed under an abuse-of-discretion standard. *Leary v. Daeschner*, 349 F.3d 888, 904 (6th Cir. 2003). An abuse of discretion occurs when the reviewing court has "a definite and firm conviction that the trial court

committed a clear error of judgment." *Id.* (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).

### B. First Amendment retaliation claim

To prevail on her retaliation claim, Davidson must show "first, that she engaged in constitutionally protected speech or conduct; second, that [defendants] took an adverse action against her that would deter a person of ordinary firmness from continuing to engage in that speech; and third, that a causal connection exists between the protected speech and the adverse employment action." *Buddenberg v. Weisdack*, 939 F.3d 732, 739 (6th Cir. 2019). A public employee's speech is entitled to constitutional protection when (1) "the speech addresse[s] a matter of public concern," (2) "the employee sp[eaks] as a private citizen [and not] as an employee pursuant to her official duties," and (3) "the employee's speech interest outweighs 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* (quoting *Mayhew*, 856 F.3d at 462).

Here, defendants assumed for the purposes of their motion for summary judgment that Davidson's speech addressed a matter of public concern. The district court thus moved on to the second inquiry concerning whether Davidson's speech was protected, whether she spoke as a private citizen or as an employee pursuant to her official duties. We agree with the district court's determination that Davidson spoke as a public employee when she presented her views on the proposed change to Donelson's mascot. As that holding is dispositive of her First Amendment claim, we address that element alone.

In distinguishing between employee and citizen speech, the Supreme Court has said that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes[.]" *Garcetti v. Ceballos*, 547 U.S. 410, 421

(2006). But the "mere fact that a citizen's speech concerns information acquired by virtue of h[er] public employment does not transform that speech into employee—rather than citizen—speech." *Lane v. Franks*, 573 U.S. 228, 240 (2014). "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* Relevant factors include "the speech's impetus; its setting; its audience; and its general subject matter," as well as whether the employee's speech was delivered up the chain of command. *Mayhew*, 856 F.3d at 464–66.

The record demonstrates that Davidson's speech was within her ordinary job responsibilities. Mason invited Davidson to speak at the Board's "work session" because Donelson's mascot was at issue. No plausible reason is offered for why Davidson's opinion was specifically solicited other than the fact that the Board might value her input as principal of Donelson, one of the two schools that would be directly impacted by the mascot change. Davidson's statements themselves also suggest she was speaking in her capacity as principal; she described polling parents and students to pick the mascot, explained that the mascot was a point of school pride, and noted that "[her] staff" would prefer that the mascot remain unchanged. (Mason Dep., R. 25-19, PageID 805.) The impetus and subject matter of Davidson's speech therefore favor the finding that she was speaking in her capacity as principal.

The context of Davidson's speech similarly indicates she spoke within the scope of her duties as principal. She presented her views about Donelson's mascot at a work session before Mason and the ACS Board, who were formulating a five-year strategic plan for the district, and her audience then decided to approve Davidson's recommendation to keep Donelson's mascot the same. Contrary to her assertion that she attended and spoke at the work session as a "private citizen," Davidson admitted she would not have communicated with the Board without the

permission of Mason, her immediate superior. She also specifically avoided saying anything "critical of Ms. Mason" because Mason was her "boss" and she did not want to be "insubordinate." (Davidson Dep., R. 42-2, PageID 1503–04.) We find that the content of and circumstances surrounding Davidson's statements at the work session weigh in favor of concluding that her speech was made in her official capacity as principal.

Davidson's arguments on appeal do not compel a different outcome. Davidson argues that because she was "under no obligation, as an employee of ACS to go to the Board work session[]," which was "held after school hours," we should find that she spoke as a private citizen. (Appellant Br. at 24.) But Davidson points to no evidence showing that her attendance at a work session addressing an issue that directly impacts the culture of her school deviated from her job duties. Even if not expressly within her job description, "we have repeatedly recognized . . . [that] 'ad hoc or de facto duties can fall within the scope of an employee's official responsibilities[.]'" *Mayhew*, 856 F.3d at 465 (quoting *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 544 (6th Cir. 2007)); *see also Weisbarth*, 499 F.3d at 544 (holding that though answering an outside consultant's questions did not appear in her job description, plaintiff's comments were part of "an 'ad-hoc' duty" that owed their existence to her professional responsibilities). And the mere fact that the work session occurred outside of school hours does not outweigh the various other indicia that Davidson was speaking in her capacity as principal. Indeed, Davidson's contract notes she "agrees that [she] will be required to perform additional duties outside of regular school hours." (Mason Aff. Ex. 3, R. 25-3, PageID 283.)

Davidson also contends that any concerned citizen could have attended the work session to express his or her views on the mascot issue. But Davidson points to nothing in the record indicating that the work session was in fact a public event, and in any case *Garcetti* did not hold

that speech in a public forum could never be made pursuant to one's job duties. Finally, Davidson invites us to apply the *Pickering* balancing test per Justice Souter's dissent in *Garcetti* in lieu of the majority's binding approach; we reject the invitation. The district court's grant of summary judgment was appropriate.

### C. Breach of contract

#### 1. Legal framework

Davidson argues that the district court erred when it granted summary judgment in favor of the ACS Board on her claim of breach of the implied duty of good faith and fair dealing. She offers three reasons in support of this claim. First, she contends that her contract did not contain the performance standards identified in T.C.A. § 49-2-303(a). Second, she claims that the Board violated its own policy when it demoted her. Third, she argues that her demotion was unlawful "because it would not be in the best interest of the students." (Appellant Br. at 40.) As explained below, the district court appropriately rejected each of these arguments.

As a preliminary matter, in Tennessee, "[b]reach of the implied covenant of good faith and fair dealing is not an independent basis for relief." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 572 (6th Cir. 2003). Rather, a cause of action purportedly for breach of the covenant of good faith and fair dealing is properly construed as one of breach of contract. *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 685 & n.1 (Tenn. 1996). Therefore, though she invokes the duty of good faith and fair dealing, Davidson must still satisfy the elements of a breach-of-contract claim, which include "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (quoting *Custom Built*

*Homes v. G.S. Hinsen Co.*, No. 01A01-9511-CV-00513, 1998 WL 960287, at \*3 (Tenn. Ct. App. Feb. 6, 1998)).

Tennessee courts thus permit the invocation of the duty of good faith and fair dealing only in the context of explaining the breach or nonperformance of the contract. *See Wallace*, 938 S.W.2d at 686. The purpose of the duty is to "honor[] the contracting parties' reasonable expectations" and "protect[] the rights of the parties to receive the benefits" they bargained for. *Barnes & Robinson Co., Inc. v. OneSource Facility Servs.*, 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006). The scope of the duty "depends upon the individual contract in each case." *Id.* at 643. But this implied duty does not "create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement." *Id.*

### 2. Application

With these background principles in mind, we conclude that Davidson's claim cannot survive summary judgment. First, Davidson's argument that the Board breached its contract with Davidson by not including "performance standards as required by the plain language of T.C.A. § 49-2-303(a)" fails at the starting line. (Appellant Br. at 34.) "[I]n determining whether the parties acted in good faith in the performance of a contract, the court must judge the performance against the intent of the parties as determined by a reasonable and fair construction of the language of the instrument." *Wallace*, 938 S.W.2d at 686. Here, the substance of Davidson's argument is not that the Board failed to abide by a provision in her contract—she points to none—but rather that the contract did not abide with what "the legislature mandated." (Appellant Br. at 35.) Importing this statutory mandate into the parties' contract would in effect "create [a] new contractual right[]" for Davidson—she cannot rely on the implied duty of good faith and fair dealing to do so. *Barnes*, 195 S.W.3d at 642. Moreover, Davidson presents no authority, nor can we find any, suggesting

that Tennessee courts read into contracts an implied obligation that the contract contain any and all provisions mandated by statute or specifically by § 49-2-303(a). Davidson therefore does not identify nonperformance.

Next, Davidson's argument that the Board breached its duty of good faith and fair dealing by violating its own policy fails for similar reasons. Davidson claims the Board failed to transfer her to a teaching position within five days of the last day of school as its policy required. But she does not explain how the policy violation (if any) resulted in nonperformance of her contract or a lack of good faith in executing one of its provision as intended. Davidson argues that the Board's policy violation "implicates" T.C.A. § 49-5-510, which automatically results in a breach of the duty of good faith and fair dealing; she claims "it is axiomatic that a violation of the duty of good faith and fair dealing can be properly analyzed if it is proven that a party violated the law in dealing contractually with someone." (Appellant Br. at 37.) But she cites no authority to support this proposition. Permitting a plaintiff to tether any statutory violation to the duty of good faith and fair dealing, regardless of the agreed-upon contractual terms, would stretch the doctrine in a manner far beyond its current purpose under Tennessee law. And to the extent Davidson wanted to bring a claim directly under § 49-5-510, she would have had to amend her complaint. *See State ex rel. Hyde v. Bills*, No. 86-8-II, 1986 WL 6565, at *4–5 (Tenn. Ct. App. June 11, 1986) (citing *McKenna v. Sumner Cnty. Bd. of Educ.*, 574 S.W.2d 527, 534 (Tenn. 1978)).

Finally, Davidson's argument that the Board breached its duty of good faith and fair dealing because her positive performance at Donelson "precluded a decision to demote her" is unavailing. (Appellant Br. at 40.) Mason cited high teacher turnover and various complaints as the reason for transferring Davidson. And Davidson's contract plainly states that she "understands and agrees that the ACS Superintendent reserves the right to transfer [her] to a position other than an

Administrator position as may be in the best interest of the Board." (Mason Aff. Ex. 3, R. 25-3, PageID 283.) Under these circumstances, we agree with the district court that no reasonable juror would find that Mason executed that highly discretionary provision in bad faith. *See Wallace*, 938 S.W.2d at 687 ("Performance of a contract according to its terms cannot be characterized as bad faith.").

### D. Motion to amend the complaint

Davidson finally contends that the district court abused its discretion when it denied her motion for leave to amend the complaint so that she could add a claim under T.C.A. § 49-5-510. We disagree. Davidson waited almost a year after the court-ordered deadline for filing amended pleadings, and nearly four months after defendants moved for summary judgment, to file an amended complaint. Once the deadline to file amended pleadings passed, Davidson had to "show good cause under [Fed. R. Civ. P.] 16(b) for [her] failure earlier to seek leave to amend[,]" which requires consideration of her diligence and the risk of prejudice to defendants. *See Leary*, 349 F.3d at 906-09. Davidson's only justification for the delay in identifying a cause of action under T.C.A. § 49-5-510 was that the omission was an "oversight." The district court reasonably found this justification insufficient. *See Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 934 (6th Cir. 2020) ("failure of [plaintiff] to realize it could have made claims" is not an adequate reason for delaying seeking leave to amend); *Leary*, 349 F.3d at 908. And allowing "an amendment after discovery is closed and summary judgment motions are fully briefed imposes significant prejudice on defendants." *Church Joint Venture*, 947 F.3d at 934 (quoting *Siegner v. Twp. of Salem*, 654 F. App'x 223, 228 (6th Cir. 2016)). At this late stage in the proceedings, the district court was well within its discretion to deny Davidson's motion.

## III.    CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court granting defendants' motion for summary judgment and denying Davidson's motion for leave to file an amended complaint.