**Leon AMACHER, et al.,
Plaintiffs/Appellants,**

v.

**BROWN–FORMAN CORPORATION,
Defendant/Appellee.**

Court of Appeals of Tennessee,
Middle Section,
at Nashville.

Oct. 25, 1991.

Permission to Appeal Denied by
Supreme Court Feb. 18, 1992.

Robert S. Peters, Swafford, Peters, O'Neal & Priest, Winchester, for plaintiffs, appellants.

Gareth S. Aden, Joel M. Leeman, Gullett, Sanford, Robinson & Martin, Nashville, Jack M. Irion, Bomar, Shofner, Irion & Rambo, Shelbyville, for defendant, appellee.

## OPINION

CANTRELL, Judge.

Plaintiffs, fourteen Moore County farmers, sued the makers of Jack Daniels whiskey claiming an enforceable right to purchase a distillery by-product. The chancellor granted the distillery summary judgment. The question raised in this appeal is whether the record contains material facts showing the plaintiffs have a cause of action for promissory estoppel.

### I.

In making sour mash whiskey, a distiller produces a by-product known as stillage, a wet, thick mixture of grain and other products. Stillage, sometimes referred to in the record as "slop", is a valuable source of animal feed.

In the 1960's the defendant used some of its stillage in its own cattle operation and sold a portion of it to local cattle farmers at a nominal price. As production at the distillery increased, the stillage became so plentiful that Moore County became a major cattle feeding area. The distillery set up an allocation system and required each participant to pick up his allotment on a regular basis. No formal agreements were ever executed, however, and any of the farmers were free to quit participating in the program at any time.

In the 1970's, state and federal environmental agencies became concerned about the pollution of Mulberry Creek, the source of water for the city of Lynchburg. Since many of the farmers feeding the stillage were located on the creek or its tributaries, the fecal bacteria count in the creek became alarmingly high. The environmental agencies had no authority to move directly against the farmers, so they sought the assistance of the distillery in correcting this problem. In response, the distillery, in 1978, began allocating stillage only to those farmers who moved their herds or improved the feeding sites to comply with the requirements of the state and federal agencies. All but one of the farmers complied by moving their herds or by taking steps to reduce the amount of pollution reaching the creek.

In 1982, the distillery cut back its production due to a slower market for its product and, consequently, reduced the allocation of stillage to each of the farmers. In 1984, the distillery decided to install a "dry house" which reduced the amount of "slop" and produced other products called "wet cake" and "distiller's dried grain". The prices for all the by-products rose.

In 1985, the plaintiffs, some of the farmers affected by the distillery's action, joined together and sued the distillery, claiming that the promises of continued availability of stillage had induced them to continue in the cattle business and expend large sums of money expanding their operations. The chancellor granted the distillery's motion for summary judgment, holding that the record showed that as a matter of law a cause of action based on promissory estoppel could not be maintained.

## II.

Although the complaint in this case uses traditional tort language, the plaintiffs had conceded by the time the motion for summary judgment was heard that their claim rested entirely on the theory of promissory estoppel. They rely on the provisions of § 90 of the *Restatements of Contracts 2d:*

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

We think the plaintiffs may invoke the theory of promissory estoppel, even though contracts for the sale of goods would ordinarily be governed by Article 2 of the Uniform Commercial Code. *See* Tenn.Code Ann. § 47–2–101, et seq. In its general provisions, the U.C.C. recognizes that various legal principles—including that of estoppel—may be used to supplement its specific provisions. Tenn.Code Ann. § 47–1–103.

The key element in finding promissory estoppel is, of course, the promise. It is the key because the court must know what induced the plaintiff's action or forbearance; only then would the court be able to prevent the injustice resulting from a failure to keep the promise.

The courts have not worked out a uniform standard to determine whether a defendant's words or actions justify the plaintiffs reliance. Some courts hold that the promise must be definite and unequivocal.

*Reuben v. First National Bank,* 146 Ga. App. 864, 247 S.E.2d 504 (1978); *West Farms Estate Co. v. Consolidated Edison Co.,* 75 A.D.2d 622, 426 N.Y.S.2d 837 (1980); *Rossow Oil Co. v. Heiman,* 72 Wis.2d 696, 242 N.W.2d 176 (1976). Other courts hold that the promise may be inferred from the general statements of the promisee. *Prudential Ins. Co. of America v. Clark,* 456 F.2d 932 (5th Cir.1972); *Perlin v. Board of Education,* 86 Ill.App.3d 108, 41 Ill.Dec. 294, 407 N.E.2d 792 (1980). *See,* Feinman, *Promissory Estoppel and Judicial Method,* 97 Harv.L.Rev. 678. The latter view would seem to be more in line with the *Restatement 2d*'s definition of a promise as "a manifestation of intention ... so made as to justify a promisee in understanding that a commitment has been made." *Restatement of Contracts 2d,* § 2.

Regardless of how one arrives at a conclusion that a promise has been made, however, the resulting promise must be unambiguous and not unenforceably vague. *See Perlin v. Board of Education,* 86 Ill.App.3d 108, 41 Ill.Dec. 294, 407 N.E.2d 792 (1980) and *Reuben v. First National Bank,* 146 Ga.App. 864, 247 S.E.2d 504 (1978). In their brief the appellants describe the promise this way:

> Jack Daniel manifested an intention and made a commitment to the Moore County slop feeders that if they took substantial action and made such expenditures as were necessary for approved cattle feeding sites and "held on" and did as Jack Daniel directed, they were to have a continuing supply of thick stillage.

We are of the opinion that the promise described by the appellants is unenforceably vague. One must ask, "In what quantities?" and "For how long?" and "At what price?" Without these essential terms the court cannot determine whether any injustice will occur from the distillery's decision to curtail its production and alter the way it treats its stillage.

We realize that this is not a class action. What we have is an action by fourteen separate plaintiffs, raising the possibility that there could be fourteen different

promises. We think, however, after reading the individual plaintiff's statements that the promise stated in the appellants' brief is a fair summary of their testimony. Some of them claimed a promise to supply stillage for a period of ten years (from 1978), but none of them claimed that the distillery promised to provide a specific quantity at a certain price. In fact, virtually all of the plaintiffs testified that they knew the volume of stillage available depended on the distillery's production level.

We think that, taking everything in the record as true, as the chancellor did, the chancellor correctly granted summary judgment. The promise the distillery allegedly made was too indefinite to provide a basis for relief.

Since we have sustained the chancellor's decision on other grounds, we pretermit the statute of frauds issue raised by the appellee.

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Moore County for any further proceedings that may become necessary. Tax the costs on appeal to the appellants.

TODD, P.J., and KOCH, J., concur.