**Edgar A. RICE**

v.

**NN, INC. BALL & ROLLER DIVISION.**

Court of Appeals of Tennessee, at Knoxville.

April 3, 2006 Session.

June 30, 2006.

Permission to Appeal Denied by Supreme Court Dec. 18, 2006.

ing a declaratory judgment that a contract exists between the parties or, in the alternative, that the defendant made a promise to the plaintiff which it is estopped to deny. Prior to his employment with NN, Inc., that company gave the plaintiff a document ("the term sheet") that reflected what his starting salary would be and what fringe benefits he would be entitled to in the event he accepted the company's offer of employment. The plaintiff argues that the term sheet includes a promise to pay him a "Profit Trust" of $165,000 when he reaches the age of 65. The defendant counters that the "Profit Trust" language in the term sheet is only an estimate, not a contract or a promise to pay the plaintiff a fixed definite amount at age 65. On cross motions for summary judgment, the trial court granted summary judgment to the plaintiff, holding that he was entitled to $165,000 when he reached the age of 65. The defendant appeals. We reverse the grant of summary judgment to the plaintiff; grant summary judgment to the defendant; and dismiss the plaintiff's complaint.

Ronald S. Range, Jr., Jennifer P. Keller, and David Harvey, Johnson City, Tennessee, for the appellant, NN, Inc. Ball & Roller Division.

D. Bruce Shine and Donald F. Mason, Jr., Kingsport, Tennessee, for the appellee, Edgar A. Rice.

## OPINION

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Edgar A. Rice sued his former employer, NN, Inc. Ball & Roller Division, seek-

### I.

From 1976 to 1981, the plaintiff was employed by Hoover Ball and Bearing Company. In 1980 and early 1981, several Hoover employees left the company to establish NN, Inc. In mid–1981, Richard Ennen, president of NN, Inc., instructed Paul Farnor, the manufacturing manager of NN, Inc., to approach the plaintiff about coming to work for the new company. The record indicates that the defendant recruited other Hoover employees during the same time period.

Mr. Farnor met with the plaintiff on multiple occasions to discuss his possible employment with the defendant. Later, at the direction of Mr. Ennen, Mr. Farnor delivered the term sheet to the plaintiff.

The term sheet consists of a comparison between the wages and benefits offered by the defendant and the wages and benefits available to the plaintiff by virtue of his employment at Hoover. Though it is undisputed that the term sheet was prepared by an agent of the defendant, its author is unknown. The term sheet was not signed by the plaintiff or the defendant. The defendant's logo and trade name, along with the words "Prepared Especially for Edgar Rice," are located near the top of the page. The term sheet contains the following comparison between the two companies:

| | NN | Hoover |
|---|---|---|
| Wages | | |
| Base Rate | $ 8.80/hr. | $ 6.29/hr. |
| Add on | N/A | .16/hr. |
| Incentive @ 25% | N/A | 1.57/hr. |
| Total Wages per hour | $ 8.80 | $ 8.02 |
| | | |
| Total Annual Wages | $ 18,304.00 | $16,682.00 |
| Pay for excused absence | Full | -0- |
| | | |
| Fringe Benefits | | |
| Life Insurance | | |
| Employee | $ 10,000.00 | $ 9,000.00 |
| Dependent Children | 1,000.00 | 0 |
| Spouse | 2,000.00 | 0 |
| | | |
| Hospitalization (Deductible) | $ 100.00 | $ 50.00 |
| Major Medical (80%) | 1,000,000.00 | 40,000.00 |
| Sick Benefits | $ 211/Wk | $ 135/Wk |
| | | |
| Vacation | 2 Weeks | 2 weeks |
| Holidays | 11 days | 11 days |
| Year End Bonus (Estimated) | $ 600.00 | 0 |
| Pension | N/A | 252.Mo. |
| | | |
| *Profit Trust (Estimated)* | *$ 165,000/age 65* | *0* |

note: Profit Trust would equal 55 years at $252.00/Mo.[1]

(Emphasis added).

The record indicates that the defendant gave the plaintiff a second document a day or two after delivering the term sheet to him. The second document, though formatted somewhat differently, included every NN/Hoover comparison found in the term sheet. The only substantive difference between the two documents was the addition of a dental insurance benefit under the NN, Inc. column. The language in the second document dealing with the "Profit Trust" is similar to that of the term sheet:

| | NN | Hoover |
|---|---|---|
| * Profit Trust (Age 65) | $165,000 Est. | -0- |

*Note-Profit Trust at age 65 would equal 55 years at $252./mo.

---

1. The $252 figure was used because this is the monthly pension reflected in the Hoover column.

There is a third document in the record entitled "Other NN Benefits." Although not particularly pertinent to the issues on this appeal, its contents are shown in the interest of presenting a complete history of the negotiations between the defendant and the plaintiff:

1. All salaried plant—paid in full on the 15th and last day of month except for overtime. Overtime worked in first half of month paid last day of the month. Overtime worked last half of month paid 15th of following month. Paid for excused absences.

2. Overtime paid at time and one half for all over 40 hours per week. Vacation and holiday counted as hours worked for overtime purposes. Double time paid for all Sunday work and work on holidays.

3. Regular work week begins at 7:00 A.M. Mondays and runs through 7:00 A.M. Saturday.

4. Should you report to work by Monday September 14th you will be placed on the payroll as of September 1st and paid for the first half of September. That would amount to $774.40 less FICA and Federal Income Tax.

5. Should you report to work by Monday September 14th your life and hospitalization insurance will become effective on that date.

In September, 1981, the plaintiff left Hoover to join the employment of the defendant. According to the plaintiff, the "Profit Trust" provision "was one of the reasons" for his change in employment.

In 1982, the defendant was forced to lay off some of its employees, including the plaintiff. Three months later, the plaintiff returned to work for the defendant. In 1984, when the defendant started showing a profit, it implemented a 401(k) plan for its employees. The company initially contributed a maximum of $300 per year for each participating employee; this amount was later increased to $500. The plaintiff participated in the 401(k) plan, but never contributed the maximum amount. At the time of his retirement in 2003—a few years short of his 65th birthday—the plaintiff's 401(k) plan had a value of approximately $65,000,[2] of which NN, Inc. had contributed $10,000.

The plaintiff worked for the defendant for approximately 22 years before retiring. During the course of his employment, he received higher wages, benefits, and bonuses than those outlined in the term sheet. The plaintiff never discussed with the defendant, either before or during his employment, the company's plans regarding the "Profit Trust." Furthermore, he acknowledges that, after commencing his employment with NN, Inc., he did not see the term sheet again for the next 20 years. In 2002 or 2003, the plaintiff found the term sheet and presented it to the company's vice-president of operations, asserting that the "Profit Trust" language required the defendant to pay him $165,000 when he turned 65 in a few years. The defendant denied that the plaintiff had a right to receive $165,000 from the company, arguing that this figure was only an estimate and that the 401(k) plan established by the company was the "Profit Trust" referenced in the term sheet. The plaintiff countered that the "Profit Trust" was a retirement program created especially for him. The defendant adamantly denied this assertion, noting that all of its employees recruited during the start-up phase received the same basic proposal. According to the

---

**2.** This was the figure shown by the plaintiff's testimony. At another place in the record, the plaintiff's 401(k) plan balance at the time of his retirement is shown as $75,000.

defendant, all employees hired around the same time as the plaintiff were advised that the defendant was going to provide some sort of profit-sharing retirement program when there was a profit to share.

The plaintiff originally filed this action seeking a declaration "that NN's offer of employment constitutes a contract," and asking for a determination of his rights "pursuant to the contract." The defendant removed the case to federal district court, asserting that federal court had jurisdiction because the plaintiff's claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). Initially, the district court ruled that it had jurisdiction over this litigation; however, it later reconsidered and remanded the case to the trial court, finding that the plaintiff's action was not an action governed by ERISA.

The plaintiff subsequently amended his original complaint, adding the theory of promissory estoppel. On April 13, 2005, the plaintiff filed a motion for summary judgment. On May 16, 2005, the defendant filed its answer to the plaintiff's amended complaint, a competing motion for summary judgment, and its responses to the plaintiff's statement of undisputed facts. Both motions were set for hearing on May 26, 2005. The plaintiff filed his response to the defendant's statement of undisputed facts, along with his supplemental affidavit, on May 25, 2005.

After hearing argument, the trial court granted summary judgment to the plaintiff, stating, from the bench, that

> I find that the [p]laintiff's Motion presents no genuine issue of material fact, and they're entitled to a Judgment as a matter of law. The Court finds that the [d]efendant's Counter–Motion, of course, Counter being filed subsequent to the [p]laintiff's Motion, basically, just takes the negative of the positives that the [p]laintiff has in its Motion. For instance, the [d]efendant in its Motion says that the term sheet is not a contract. I find it is. It says the term sheet is not a contract. It's a 401 plan. I find that's incorrect. The law and facts just do not support it. They find that the [p]laintiff has not made out a claim for promissory estoppel. I find that they have. They contend in their Motion for Summary Judgment that the [p]laintiff must work until age sixty-five. I find that he doesn't. The fact that the [p]laintiff had a three-month interval where he was off from work at [NN, Inc.] does not affect his contract nor the promises that [NN, Inc.] made to him one iota .... the [d]efendant says they're entitled to a Motion for Summary Judgment because any damages to [the plaintiff] would be speculative. That's just not the truth in this case. The damages are exactly what this contract says, a hundred and sixty-five thousand dollars ($165,000.00) at age sixty-five, and the Court finds that the [d]efendant has not made out a case for a Rule 56 Motion.

From this judgment, the defendant appeals.

## II.

The defendant challenges the trial court's grant of summary judgment to the plaintiff, raising four issues for our review:

1. Did the trial court err by finding that the term sheet given to the plaintiff constituted an enforceable contract? Additionally, did the trial court err by denying the defendant's motion for summary judgment on the contract claim?

2. Did the trial court err by finding that the plaintiff had established a claim for promissory estoppel? Additionally, did the trial court err by denying the

defendant's motion for summary judgment on that same claim?

3. Did the trial court err in admitting and considering the affidavit filed by the plaintiff one day before the hearing on the motions for summary judgment?

4. Did the trial court err in awarding the plaintiff $165,000 in damages?

Our resolution of the first and second issues are dispositive of this appeal.

## III.

In determining whether summary judgment is appropriate, a court must determine "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Summary judgment should be granted "when both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion." *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995) (citing *Byrd v. Hall,* 847 S.W.2d 208, 210–11 (Tenn.1993)). Since a motion for summary judgment presents a pure question of law, we review the trial court's judgment *de novo,* according no presumption of correctness as to the trial court's conclusions of law. *Gonzales v. Alman Constr. Co.,* 857 S.W.2d 42, 44–45 (Tenn.Ct.App. 1993). In the instant case, both sides sought summary judgment. Our review of the record persuades us that the material facts in this case are not in dispute. Hence, the only question is whether those undisputed material facts demonstrate conclusively that one of the parties is entitled to summary judgment and, if so, to which side such judgment should be granted.

## IV.

### A.

■ The defendant first contends that the trial court erred when it found that the term sheet constituted a valid and enforceable *contract.* The plaintiff counters by asserting that the term sheet—specifically the language dealing with the "Profit Trust"—was an offer by the defendant which was accepted by the plaintiff when he agreed to work for the defendant.

■ Relevant to our analysis are several general principles of contract law. These are well set forth in the case of *Jamestowne on Signal, Inc. v. First Federal Sav. & Loan Ass'n,* 807 S.W.2d 559 (Tenn.Ct.App.1990):

> It is well established in this jurisdiction that a contract can be expressed, implied, written, or oral, but an enforceable contract must, among other elements, result from a meeting of the minds and must be sufficiently definite to be enforced.... In addition, a mere expression of intent or a general willingness to do something does not amount to an "offer."

> Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.

> The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.

> The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance.

*Id.* at 564 (quoting in part Restatement (Second) of Contracts § 33) (citations omitted).

*Loeffler v. Kjellgren,* 884 S.W.2d 463 (Tenn.Ct.App.1994) provides additional guidance. In *Loeffler,* the employer prepared a letter outlining proposed salary and benefit terms for the plaintiff. *Id.* at 466. Approximately three years after coming to work for the employer, the plaintiff was laid off. *Id.* at 467. The plaintiff filed suit, arguing that the letter constituted a binding eight-year employment contract because it mentioned a benefit which would not accrue until after eight years. *See Id.* at 466. The trial court granted the employer a directed verdict, stating that a contract was not created because the letter did not constitute an offer. *Id.* at 467 ("a mere expression of opinion or a prophecy of what's to come is not an offer"). This Court agreed with the trial court's holding, stating as follows:

> The letter merely confirms defendants' "interest" in employing plaintiff's services and outlines, per plaintiff's request, plaintiff's "expectations for compensation." The letter does not offer the plaintiff a contract of employment for an eight year term.

*Id.* at 468. Though the instant case does not involve a claim of a definite term of employment, we find the general rationale in *Loeffler* to be pertinent and helpful in resolving the controversy before us.

Generally speaking, the term sheet was intended to show what the plaintiff might expect to receive in wages and fringe benefits as an employee of the defendant as compared to what the plaintiff would receive at Hoover. However, with respect to the "Profit Trust," the term sheet merely provides an *estimate* of what the plaintiff could expect to receive. The term sheet does not promise or in any way guarantee that the plaintiff will receive $165,000 at age 65. There is no evidence in the record demonstrating that the defendant *promised* to pay the plaintiff $165,000 when he

reached age 65. Even if the plaintiff could show that the term sheet came to him in a promissory manner (*i.e.,* we promise to pay you an estimated $165,000 at age 65), the plaintiff still cannot prevail because the specific amount of money "promised," is not "sufficiently definite to be enforced." *Jamestowne on Signal, Inc.,* 807 S.W.2d at 564. The $165,000 figure was an *estimate.* An estimate is simply that—an estimate. An *estimated* amount cannot reasonably be construed as a guaranteed absolute figure.

We also note that the plaintiff's "contract" assertion at trial, which he again argues on appeal, assumes that, once the plaintiff reported to work in 1981, he was entitled to receive $165,000 from the defendant when he reached the age of 65, *regardless of the length of time he actually worked for the defendant.* Using this logic, the plaintiff could have worked for the defendant for only a few days, and when he turned 65, he could have demanded that the company pay him $165,000. We find nothing in the record to support such a theory of recovery.

The plaintiff's contention that the "Profit Trust" language in the term sheet amounts to an enforceable contract must be rejected. We further conclude that the defendant, rather than the plaintiff, is entitled to a judgment as a matter of law on the plaintiff's contract claim. The facts and the inferences from those facts "permit a reasonable person to reach only one conclusion"—the defendant did not breach a contract with the plaintiff when it refused to pay him $165,000. *Carvell,* 900 S.W.2d at 26.

### B.

▆ The defendant next argues that the trial court erred when it found that the plaintiff had established a *promissory estoppel* claim. The plaintiff's basic argument on this issue is that he left his job at

Hoover because of, and in reliance on, the defendant's promise to pay him $165,000 at age 65.

■ Promissory estoppel has been defined as

> [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise.

*Amacher v. Brown–Forman Corp.*, 826 S.W.2d 480, 482 (Tenn.Ct.App.1991) (quoting Restatement (Second) of Contracts § 90); *see Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn.1982). Promissory estoppel is said to be limited to situations where (1) the detriment suffered in reliance is substantial in an economic sense; (2) the substantial loss to the promisee is foreseeable by the promisor; and (3) the promisee acted reasonable in justifiable reliance on the promise as made. *Alden*, 637 S.W.2d at 864 (citing L. Simpson, *Law of Contracts* § 61 (2d ed. 1965)).

■ To successfully state a claim for promissory estoppel, the asserting party must first show that a promise was made and that it reasonably relied upon the promise to its detriment. *Calabro v. Calabro*, 15 S.W.3d 873, 879 (Tenn.Ct.App. 1999) (citations omitted). The promise upon which the party relies "must be unambiguous and not unenforceably vague." *Id.* (citing *Amacher*, 826 S.W.2d at 482). We conclude that any analysis of the plaintiff's promissory estoppel claim ends here. As previously noted, the plaintiff has failed to demonstrate an unambiguous promise to pay $165,000. The term sheet did not

promise such a payment. Again, the term sheet merely provided the plaintiff with an *estimate* of what he could expect to receive from an undefined "Profit Trust" at age 65. The record is devoid of any evidence suggesting that the defendant, either verbally or through its actions, in any way promised to pay the plaintiff $165,000 at age 65. The first, and most essential, element of promissory estoppel is lacking in this case. There was no promise to pay $165,000.

■ The plaintiff's claim based upon a theory of promissory estoppel must also fail on the issue of *justifiable* reliance. We would again note that the term sheet, which is the sole basis of the plaintiff's reliance, clearly states on its face that the $165,000 figure is an *estimate*. The plaintiff has acknowledged that he understands the word "estimated" to mean "a guess." We also note that the plaintiff has failed to show that he suffered a substantial economic loss by switching his employment from Hoover to NN, Inc. The proof on this latter point is simply lacking.

In light of the foregoing discussion, we hold the plaintiff has failed to establish a promissory estoppel claim. The defendant is also entitled to a judgment as a matter of law on this latter claim.

## C.

The defendant also argues that the trial court erred in admitting and considering the plaintiff's supplemental affidavit. The defendant points to the following two alleged defects with respect to the affidavit: (1) it was untimely filed according to the "five-day rule" set forth in Tenn. R. Civ. P. 56.04 [3]; and (2) it was not properly made a part of the record pursuant to Tenn. R.

---

**3.** Tenn. R. Civ. P. 56.04 provides, in pertinent part, as follows:

The motion shall be served at least thirty (30) days before the time fixed for the hearing. The adverse party may serve and file opposing affidavits not later than five days before the hearing. . . .

Civ. P. 56.03. With respect to this latter contention, the defendant asserts that the plaintiff was required to file a statement of undisputed facts incorporating the facts addressed in the supplemental affidavit. *See* Tenn. R. Civ. P. 56.03. The plaintiff simply attached his supplemental affidavit to his responses to the defendant's statement of undisputed facts. He did not provide an additional statement of undisputed facts. In addressing this matter, the trial court stated the following:

> The Court: We're arguing the merits today on a Motion, and we haven't even—now, you're arguing that there's not been compliance with the Motion. Now, look. I'm of a mind to send everybody home and start over again, or I'm a [sic] mind to just go ahead and give it on record today and let you all duke it out in the Court of Appeals. Now, I—unless you—unless the [d]efendant has filed something attacking the [p]laintiff[ ] is not complying with Rule 56, I don't want to hear an argument. You have to have filed something to tell me about that, or you have not filed this, and if you haven't filed it, don't argue. Okay? All right, have you filed it?
>
> The Defendant's Counsel: No, Your Honor.
>
> The Court: Don't argue it. I don't want to hear it.

Given our disposition of the other issues in this case, we do not find it necessary to reach the merits of this issue.

### V.

In summary, we hold that the trial court erred when it ruled in favor of the plaintiff on both the contract and promissory estoppel claims. Therefore, its grant of summary judgment to the plaintiff must be reversed. We also hold that the defendant is entitled to summary judgment on both claims. To the extent that the defendant

raises issues that we have not discussed, consideration of those issues is pretermitted.

### VI.

The judgment awarding the plaintiff summary judgment is reversed. Summary judgment is hereby awarded to the defendant. Accordingly, the plaintiff's complaint is dismissed at his cost, both on appeal and at the trial court level. This case is remanded to the trial court.