**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0419n.06

No. 11-5464

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Apr 16, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| FRANK CHAPMAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| SOUTHERN NATURAL GAS COMPANY, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WILCREST FIELD SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Before: GIBBONS and SUTTON, Circuit Judges; DUGGAN, District Judge.[*]

DUGGAN, District Judge. Plaintiff Frank Chapman appeals the district court's grant of summary judgment for Southern Natural Gas Company ("SNG") on his claim of promissory estoppel. We affirm.

I.

On August 22, 2008, Chapman was recruited by Dale Weaver, an employee of SNG, to work on a construction project in Muldon, Mississippi. At the time, Chapman was working as an

---

[*]The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

electrical foreman for another company, but he expressed interest in the job upon hearing that it would pay considerably more than his current employment. Weaver told Chapman that if he were to "come on board," it would be as an employee of a contractor, rather than SNG. Weaver gave Chapman the names of some contractors that SNG regularly worked with and explained that Chapman could contact any of these contractors to obtain specific information on their pay and benefits. Chapman stated that he would call Wilcrest Field Services ("Wilcrest"), as he had heard that Wilcrest was a good company. Chapman voiced concerns about walking off his current job, and in response, Weaver suggested that Chapman train a replacement.

During the next few days, Chapman contacted Wilcrest and completed the necessary "new hire" paperwork. He informed his current supervisor that he would be leaving to work on the SNG project. Chapman also trained his replacement. All that remained to finalize the arrangement was SNG's "activation" of Chapman's employment, which would be accomplished by issuing a purchase order to Wilcrest.

On August 28, 2008, Weaver called Chapman and said that he wanted to make sure that Wilcrest would not "freak out" when he called to activate Chapman. Chapman explained that everything with Wilcrest had been taken care of and that he would be quitting his current job that week. Weaver provided directions to Muldon and mentioned a start date of September 2, 2008, but Chapman stated that he had not been to his home in Tennessee in some time and needed to return there to cut hay. Weaver told Chapman that he could take that whole week off to cut his hay, and he would be contacted soon about which gate to use at the Muldon site.

Chapman left his job the next day.  Soon afterward, he was told that he would not be needed on the SNG project.  Chapman was unable to return to his previous job, and filed suit in the Eastern District of Tennessee against Wilcrest and SNG.  He asserted claims of breach of contract, tortious interference with employment, and promissory estoppel.  Chapman later stipulated to the dismissal of Wilcrest from this action, and SNG moved for summary judgment.  The district court granted SNG's motion, concluding that Chapman had abandoned the breach of contract and tortious interference claims.  As for the promissory estoppel claim, the district court concluded that Chapman had failed to establish an enforceable promise.  The court further concluded that even if Chapman had established a promise, his reliance was not reasonable.  Chapman appeals the district court's grant of summary judgment with respect to the promissory estoppel claim.

II.

The parties agree that Tennessee law governs Chapman's claim.  Under the doctrine of promissory estoppel, "'[a] promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'"  *Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982) (quoting Restatement (First) of Contracts § 90 (1932)).  The plaintiff must show: (1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that he reasonably relied upon the promise to his detriment.  *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007).

"'The key element in finding promissory estoppel is, of course, the promise.'" *Id.* at 405 (quoting *Amacher v. Brown-Forman Corp.*, 826 S.W.2d 480, 482 (Tenn. Ct. App. 1991)). In this respect, Chapman's claim is lacking. Chapman focuses on his August 28, 2008 phone conversation with Weaver, but that conversation did not include an unambiguous promise to activate Chapman's employment. Weaver stated that he wanted to make sure that Wilcrest would not "freak out" when he activated Chapman's employment. By this remark, Weaver did not commit to take any specific action. Instead, Weaver's comment seems directed at ensuring that Chapman had made the necessary arrangements with Wilcrest. Weaver's comments concerning a potential start date indicate his intent to activate Chapman's employment, but they do not constitute an unambiguous promise to do so. *Cf. Shedd v. Gaylord Entm't Co.*, 118 S.W.3d 695, 696, 700 (Tenn. Ct. App. 2003) (promissory estoppel did not apply even though plaintiffs had been given start dates). The same can be said for Weaver's statement that Chapman would be contacted about which gate to use at the Muldon site.

Chapman argues that a promise may be inferred from the general statements of the promisor. Tennessee courts have suggested that such an inference may be sufficient, but the resulting promise must be unambiguous and not unenforceably vague. *Amacher*, 826 S.W.2d at 482. *Amacher* found that a promise to sell distillery byproduct was unenforceably vague where the promise failed to specify the quantity to be sold or the time period during which the terms would apply. *Id.* The alleged promise here suffers a similar deficiency, as Weaver did not guarantee Chapman work for a particular length of time. Weaver may have stated in a prior conversation that he expected the project to last five or six months, but there was no indication that Chapman would work on the

project for its entire duration.  In fact, Chapman agrees that SNG can decide not to pursue a project and can end a worker's assignment at any time.  R.22 at 3, 18.  Weaver's statements are insufficient to infer an unambiguous and enforceable promise.

### III.

Absent an unambiguous and enforceable promise, Chapman's promissory estoppel claim fails as a matter of law.  For this reason, we affirm the district court's grant of summary judgment in favor of SNG.