IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 29, 2014 Session


THOMAS ENERGY CORPORATION v. CATERPILLAR FINANCIAL
SERVICES CORPORATION


Appeal from the Circuit Court for Washington County
No. 26751    Hon. Thomas J. Seeley, Jr., Judge

———————————————————

No. E2014-00226-COA-R3-CV-FILED-DECEMBER 26, 2014

———————————————————


This is a breach of contract and promissory estoppel action in which Plaintiff filed suit against Defendant for failure to fulfill an oral modification of leases for several pieces of earthmoving equipment.  Defendant denied wrongdoing and filed a motion for summary judgment.  The trial court granted the motion, in part, and dismissed the promissory estoppel claim.  The case proceeded to a jury trial on the breach of contract claim, but the jury failed to render a verdict.  The court declared a mistrial, and Defendant filed a renewed motion for a directed verdict.  The court granted the motion and dismissed the case.  Plaintiff appeals. We affirm the decision of the trial court.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**


JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Rick J. Bearfield, Johnson City, Tennessee, for the appellant, Thomas Energy Corporation.

Gary L. Edwards, II, Johnson City, Tennessee, for the appellee, Caterpillar Financial Services Corporation.

# OPINION

## I. BACKGROUND

Between 2003 and 2005, Thomas Energy Corporation ("Thomas Energy"), a corporation formed to mine coal and owned by Gerald Thomas ("Plaintiff"), entered into ten lease agreements for the use of earthmoving equipment with Caterpillar Financial Services Corporation ("Defendant"), a wholly owned subsidiary of Caterpillar, Incorporated. Each of the ten leases contained a modification clause that provided as follows:

> A delay or omission by Lessor to exercise any right or remedy shall not impair any right or remedy and shall not be construed as a waiver of any breach or default. Any waiver or consent by Lessor must be in writing. This lease completely states the rights of Lessor and Lessee and supersedes all prior agreements with respect to a Unit. *No variation or modification of this Lease shall be valid unless in writing.* All notices shall be in writing, addressed to the other party at the address stated on the front or at such other address as may hereafter be furnished in writing.

(Emphasis added).

In 2006, Thomas Energy was operating at a loss pursuant to a mining contract with Lambert Coal. Plaintiff debated whether he should exit the coal mining business due to the increasing cost of tires and fuel. He ultimately advised Lambert Coal that his company intended to cease mining operations on December 26, 2006. He also contacted Defendant and requested a modification in each of his leases that would allow him to miss three payments, starting in January 2007. Defendant agreed and modified the contracts.

On January 23, 2007, Plaintiff spoke with Kim Webb, a remarketing sales representative for Defendant, about marketing the equipment at issue for resale. Ms. Webb suggested that Cat Redistribution Services, Incorporated ("CRSI") might have an interest in the equipment, thereby allowing him to simply return the equipment without breaching the lease agreements. Shortly thereafter, Ms. Webb allegedly informed him that CRSI wanted the equipment and had agreed to the arrangement. Plaintiff requested documentation confirming the modification of the lease agreements; however, Ms. Webb never provided the documentation as requested.

In March 2007, Ms. Webb informed Plaintiff by email that CRSI did not want the equipment and that the terms of the original lease agreements remained in effect. Ms. Webb explained that she was unaware of his request to skip three payments when she advised him

that he could likely return the equipment. She advised Plaintiff that he should attempt to sell the equipment in the mining sector but explained that the "new set of circumstances" would not permit the return of the equipment. Plaintiff eventually sold the equipment and fulfilled the terms of the lease agreements.

On March 14, 2008, Plaintiff filed suit against Defendant on behalf of Thomas Energy, alleging breach of contract and promissory estoppel. He alleged that Defendant had agreed to an oral modification of the leases to allow the return of the equipment but then breached that agreement. Defendant responded by denying wrongdoing and filing a motion for summary judgment. Relative to the breach of contract claim, Defendant asserted that the parties had agreed that any modifications to the lease agreements must be in writing and that no such writing existed. Relative to the promissory estoppel claim, Defendant argued that the claim was not viable because the alleged promise contradicted the terms of the lease agreements. Plaintiff responded by asserting that the modification clause in the contract was null and void pursuant to Tennessee Code Annotated section 47-2A-208(2), which provides, in pertinent part,

> A signed lease agreement that excludes modification or rescission except by a signed writing may not be otherwise modified or rescinded, but, except as between merchants, such a requirement on a form supplied by a merchant must be separately signed by the other party.

Plaintiff claimed that the clause was void because he, a nonmerchant, never separately signed the requirement. He further argued that the alternative promissory estoppel theory was viable because the court had not yet decided whether the oral modification of the lease agreements was a separate, discrete agreement. The trial court granted the motion for summary judgment, in part, by dismissing the promissory estoppel claim. The case proceeded to a jury trial on the remaining breach of contract claim.

Plaintiff testified that his brother founded Thomas Construction Company ("Thomas Construction") in 1973 and that he began working with his brother in the business that same year. He first purchased an interest in the company in 1999 before purchasing the remainder of the company in 2002. He stated that he currently owned Thomas Holdings, the umbrella company for Thomas Construction and Thomas Energy. He related that Thomas Energy was formed in 2001 solely to mine coal in Southwest Virginia.

Plaintiff testified that his company used very large mining equipment, namely "off-road 150-ton trucks, large dozers, articulating rubber-tire loaders, big drills, [and] large earthmoving equipment." He asserted that Thomas Energy primarily used Caterpillar earthmoving equipment and that over the course of 40 years, the company gradually switched

to Caterpillar equipment at his insistence. He stated that his two companies likely maintained at least 66 pieces of Caterpillar equipment. He believed that Caterpillar equipment was simply better and operated more efficiently than comparable brands. He acknowledged that he purchased the equipment for use in his mining business and that he had even acquired tires from Russia for the equipment. He stated that he only liquidated or marketed the equipment for resale when the equipment became too costly to operate. He stated that he kept a mechanic from Stowers Machinery on site to maintain the equipment, which was "very high-tech" and "computer-controlled." He explained that at the time, the company did not have the capability of analyzing and troubleshooting issues with the equipment. He acknowledged that the company had since purchased the necessary technology to maintain the equipment.

Plaintiff testified that Thomas Energy leased the equipment at issue from Defendant. He related that while there were different leases for each piece of equipment, none of the leases required him to purchase the equipment at the end of the applicable lease term. He recalled that he contacted Defendant when he decided to exit the mining business and requested a modification of each lease agreement that would allow him to skip three payments. At Defendant's direction, he submitted a written request, dated January 11, 2007, which provided, in pertinent part, as follows:

> This request [to "skip lease payments" for three months] is to allow us to operate at a reduced level of production and prepare to market equipment while still maintaining cash flow. Our intention is to sell all equipment and payoff the referenced leases within a period of 90 to 120 days. This skip of payments is vitally important to help us implement our plans and be successful in our exit strategy and maintain the viability of our core construction business, which has successfully operated for over 33 years. Your consideration and help will be greatly appreciated. You may contact Gerald or I for any information needed to help expedite this process at [].

The leases were modified to reflect the approval of his request on February 28, 2007.

Plaintiff testified that in his attempt to market the entirety of his mining equipment, he contacted several companies, including Stowers Machinery and Defendant, to request assistance in the marketing process. He asserted that he was referred to Ms. Webb, who advised him that they could not market the equipment for him but that CRSI might be interested in his mining equipment, including the leased equipment. She explained that he could likely return the leased equipment without breaching the lease agreements.

Plaintiff testified that after his conversation with Ms. Webb, he emailed her a list of the equipment. He related that at that point, he had not submitted his payments for January

or February pursuant to the modification of the lease agreements. He asserted that he continually requested documentation confirming the oral agreement but that Ms. Webb never responded to his requests until she finally informed him that he could not return the equipment. The message, dated March 4, 2007, provided, in pertinent part,

> We started discussing this equipment in January and the fact that you were exiting the mining business. You asked if the remarketing division could help you market the equipment. We could not assist in that area. I took your list of equipment to CRSI. They reviewed the equipment list, the payoffs, and the payments. I advised you then, that we thought we could facilitate taking the equipment from you at payoff, with no equity going to you, especially since you would be paying it down by 3 more payments, further reducing the balance owed.
>
> What I did not know at that time, is that you had a request to skip the January, February and March payments. Three additional rounds of payments would have reduced the balance to make a tough situation better. No reduction in balance creates a new scenario.

Plaintiff stated that Ms. Webb's characterization was inaccurate because at the time of his initial conversation with Ms. Webb, he had received approval to skip the three payments and had not submitted any payments for January. He identified additional documentation concerning Defendant's intent to accept the return of the equipment in February, when he had not remitted payment for January or February.

Plaintiff testified that he rejected a contract and ceased his marketing efforts for the equipment at issue because he believed that Defendant would fulfill its agreement to accept the return of the equipment. He explained that when Defendant refused to honor the agreement, he obtained a personal, interest-only loan to purchase five pieces of the equipment in order to avoid the lease payments and improve Thomas Energy's cash flow. He acknowledged that the company continued to use the equipment until sometime in April 2007. He also acknowledged that he had since sold the equipment and that he earned a profit on the sale of five of the ten pieces of the equipment. He asserted that he relied upon dealers and equipment brokers to market the equipment.

Plaintiff conceded that at all times, he knew that the lease agreements could only be modified in writing and that no such writing existed. He agreed that unlike the agreement at issue, his modified payment plan had been transcribed in writing and signed by Thomas Energy and Defendant. He identified an email, dated February 3, 2007, in which he provided further information for the equipment he owned and the equipment at issue and advised Ms.

Webb that he would not turn down any reasonable offer. He explained that despite the information pertaining to the equipment at issue, he was only soliciting an offer for the equipment he owned. He identified another email, dated February 7, 2007, in which he attempted to solicit an offer for the equipment at issue from another company. He explained that if he had obtained an offer, he would have relayed the information to Defendant because he believed the lease agreements had already been modified.

The deposition testimony of Ms. Webb was read into the record. Ms. Webb testified that she was employed as a remarketing sales representative in December 2006 and that she worked with Plaintiff concerning the equipment at issue. She related that Defendant never intended to accept the return of the equipment and that she advised Plaintiff that Defendant does not re-acquire equipment. She explained that she contacted CRSI for Plaintiff and attempted to facilitate the return of the equipment through CRSI. She asserted that she repeatedly denied Plaintiff' continued requests for confirmation of an agreement concerning the equipment. She advised Plaintiff that CRSI would not commit to anything until it had inspected the equipment, which was still in operation at the time.

The deposition testimony of Karen Page was read into the record. Ms. Page testified that she was employed as a territory manager during the relevant time period. She explained that as a territory manager, she was "assigned to a dealership [to help] with business transactions between that dealership and [Defendant]." She stated that she worked with Stowers Machinery and Thompson Machinery. She recalled that her first interaction with Plaintiff occurred when he requested payment relief. She stated that she referred him to the Modification Department. She acknowledged that she wrote an email to Ms. Webb informing her that a representative from Stowers Machinery, Byron Matherly, had spoken to Plaintiff and corrected "his initial impression of his ability to 'walk away.'" She could not recall the substance of her conversation with Mr. Matherly.

Mr. Matherly testified that he worked as the used equipment manager for Stowers Machinery, a franchise dealer for Defendant, during the time period in question. He sold equipment to Thomas Energy, and he also facilitated the lease of one of the ten pieces of equipment at issue. He recalled speaking with Plaintiff, who believed that he could simply return the leased equipment. He confirmed that he advised Plaintiff to get an agreement in writing and that he informed Ms. Page that Plaintiff intended to return the equipment. He later assisted Plaintiff in marketing and selling the equipment at issue when Plaintiff was unable to return the equipment.

The deposition testimony of James T. Cherry was read into the record. Mr. Cherry testified that he was employed by Defendant as a loan workout analyst during the time period in question. He related that his first interaction with Thomas Energy occurred in March

2007, when the account was assigned to his department. He recalled that Plaintiff asked if he could return six of the ten pieces of equipment if he remitted payment for January, February, and March. He agreed to investigate the request but could not remember what, if anything, he did to assist Plaintiff.

Wendy Ellege, the comptroller for Thomas Construction, calculated the damages incurred by Thomas Energy to be $1,003,236.22, representing the buyouts for all ten leases less the sale prices for the equipment, plus the interest on the loan to purchase the five pieces of equipment for resale.

Following the presentation of the above evidence, Defendant moved for a directed verdict. The trial court reserved ruling on the motion. Defendant rested its case without presenting any witnesses, and the trial court submitted the case to the jury. When the jury was unable to reach a verdict and the court declared a mistrial, Defendant renewed its motion for a directed verdict. The trial court granted the motion and dismissed the case. Following the denial of post-trial motions, this appeal followed.

## II. ISSUES

We restate the issues raised on appeal as follows:

A. Whether the notice of appeal was timely filed.

B. Whether the trial court erred in granting the motion for summary judgment as it related to the promissory estoppel claim.

C. Whether the trial court erred in granting the renewed motion for directed verdict as it related to the breach of contract claim.

## III. DISCUSSION

### A.

As a threshold issue, Defendant asserts that the notice of appeal was not timely filed. Following the jury's failure to return a verdict, the trial court entered an order, dated April 10, 2013, directing the parties as follows:

[A]ny post-trial motion to be filed by any Party is to be filed within thirty (30) days of the date of this Order, or otherwise, the Case will be reset for trial on a date mutually convenient to the Court and the Parties[.]

Defendant responded to the order by filing a motion, dated April 22, 2013, to renew its request for a directed verdict. Plaintiff did not file a motion within the prescribed time period. On September 9, 2013, the trial court granted the renewed motion for directed verdict. On October 8, 2013, Plaintiff filed a motion for new trial, in which it raised various evidentiary issues and argued that the court erred in granting Defendant's renewed motion for directed verdict. On January 10, 2014, the trial court denied the motion for new trial, reaffirming its finding that a writing was required to modify the terms of the lease agreements pursuant to the lease agreements and pursuant to Tennessee Code Annotated section 47-2A-208(2) because both parties were merchants. The court further found that even if a writing was not required, Plaintiff failed to prove that an oral agreement to allow the return of the equipment existed. Plaintiff filed a notice of appeal on February 4, 2014.

Defendant argues that Plaintiff's motion for new trial was superfluous because the jury never rendered a verdict and that Plaintiff should have filed its notice of appeal within 30 days of the court's September 2013 order directing the verdict. Plaintiff responds that its motion for new trial only became necessary when the court granted the renewed motion for a directed verdict. Plaintiff asserts that the notice of appeal was timely filed within 30 days of the court's order denying the motion for new trial.

The court's April 2013 order advised the parties that a new trial would be forthcoming if neither party filed a motion within 30 days. Plaintiff chose not to file any motions in hope that the renewed motion would be denied, thereby entitling it to a new trial. We agree that Plaintiff could have filed a notice of appeal once the court entered its order directing the verdict; however, it was within its prerogative to file a motion for new trial. Indeed, Rule 50.05 of the Tennessee Rules of Civil Procedure provides,

Whenever a court shall have granted a directed verdict, *it shall not be necessary* for the party against whom the verdict was directed to file a motion for a new trial in order to obtain appellate review of such action of the court.

While the rule does not require the filing of a motion for new trial, it certainly does not prohibit a party from filing such a motion. With these considerations in mind, we conclude that the notice of appeal was timely filed pursuant to Rule 4(b) of the Tennessee Rules of Appellate Procedure, which provides, in pertinent part, "the time for appeal for all parties shall run from the entry of the order denying a new trial."

B.

Plaintiff argues on appeal that the trial court erred in dismissing its claim for promissory estoppel when it sought to alternatively assert at trial that the promise made by Ms. Webb was a separate, discrete agreement and not a modification of the lease agreements. Defendant responds that the trial court did not err because the express contract, namely the lease agreements, in this case "rendered the alternative remedy of promissory estoppel moot."

Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. A properly supported motion for summary judgment "must either (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g. Co.*, 270 S.W.3d 1, 9 (Tenn. 2008), *superseded by statute*, 2011 Tenn. Pub. Acts ch. 498 §§ 1, 3 (codified at Tenn. Code Ann. § 20-16-101).[1] When the moving party has made a properly supported motion, the "burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5; *see Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). The nonmoving party may not simply rest upon the pleadings but must offer proof by affidavits or other discovery materials to show that there is a genuine issue for trial. Tenn. R. Civ. P. 56.06. If the nonmoving party "does not so respond, summary judgment, if appropriate, shall be entered." Tenn. R. Civ. P. 56.06.

On appeal, this court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *See City of Tullahoma v. Bedford Cnty.*, 938 S.W.2d 408, 412 (Tenn. 1997). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox. Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

---

[1]The Tennessee General Assembly legislatively reversed the Tennessee Supreme Court's holding in *Hannan*. *See* Tenn. Code Ann. § 20-16-101. The statute is applicable to cases filed on or after July 1, 2011. Thus, in this appeal, we will continue to apply the summary judgment standard set forth in *Hannan* because the complaint was filed on March 14, 2008.

"Promissory estoppel is explained as: 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" *Calabro v. Calabro,* 15 S.W.3d 873, 878 (Tenn. Ct. App. 1999) (quoting *Amacher v. Brown-Forman Corp.*, 826 S.W.2d 480, 482 (Tenn. Ct. App. 1992) (quoting Restatement (Second) of Contracts § 90)); *see also Barnes & Robinson Co.v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 645 (Tenn. Ct. App. 2006) (upholding denial of promissory estoppel claim because the reliance was unreasonable in light of the circumstances of the case). "Tennessee does not liberally apply the doctrine of promissory estoppel." *Barnes*, 195 S.W.3d at 645. A plaintiff may not recover pursuant to a theory of promissory estoppel unless

> 1. the detriment suffered in reliance [was] substantial in an economic sense;
>
> 2. the substantial loss to the promisee in acting in reliance [was] foreseeable by the promisor; [and]
>
> 3. the promisee . . . acted reasonable in justifiable reliance on the promise as made.

*Calabro*, 15 S.W.3d at 879. The doctrine of promissory estoppel is also referred to as "detrimental reliance" because the plaintiff must show not only that a promise was made, but also that the plaintiff reasonably relied on the promise to his detriment. *Id.* (quoting *Engenius Entm't, Inc. v. Herenton*, 971 S.W.2d 12, 19-20 (Tenn. Ct. App. 1997)). "[T]he promise upon which the promisee relied must be unambiguous and not unenforceably vague." *Id.* (citing *Amacher*, 826 S.W.2d at 482).

Under *Hannan*, to obtain summary judgment in its favor, Defendant must have negated an element of the claim or demonstrated that Plaintiff could not establish the elements of his claim. *White v. Target Corp.*, No. W2010-02372-COA-R3-CV, 2012 WL 6599814, at *7 (Tenn. Ct. App. Dec. 18, 2012). "Under *Hannan*, we are required to assume that the nonmoving party may still, by the time of trial, somehow come up with evidence to support [his or] her claim." *Id.* at *7 n.3. Defendant asserted that Plaintiff could not support a claim of promissory estoppel because a valid contract existed. While promissory estoppel is generally an alternative remedy to a breach of contract action, Tennessee courts have upheld a claim for promissory estoppel, despite the existence of a valid contract. *See generally Bill Brown Const. Co. v. Glen Falls Co.*, 818 S.W.2d 1, at 11-12 (Tenn. 1991) (upholding a claim for promissory estoppel when the insurer's agent's representations expanded the terms of the insurance contract). In such cases, the promise alleged was generally made at the time of contracting and operated to expand, not add to or vary the terms

of the contract. *Id.* In this case, the promise at issue, namely that Defendant would accept the early return of the equipment in satisfaction of the debt, was made well after the lease agreements were executed and would have drastically varied the terms in existence. Additionally, Plaintiff's claim that the promise was a separate agreement that did not operate to vary the terms of the lease agreements is unavailing when the lease agreements clearly set forth the procedure for the return of the equipment. With these considerations in mind, we conclude that the trial court did not err in dismissing the promissory estoppel claim because Defendant was entitled to judgment as a matter of law on this issue.

## C.

The Tennessee Rules of Civil Procedure provide for directed verdicts as follows:

A motion for a directed verdict may be made at the close of the evidence offered by an opposing party or at the close of the case. The court shall reserve ruling until all parties alleging fault against any other party have presented their respective proof-in-chief. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.

Tenn. R. Civ. P. 50.01. Likewise,

Within thirty (30) days after the entry of judgment a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict; or if a verdict was not returned, such party, within thirty (30) days after the jury has been discharged, may move for a judgment in accordance with such party's motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.

Tenn. R. Civ. Pro. 50.02.

In considering a motion for a directed verdict, the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 390 (Tenn. 2006) (quoting *Crain v. Benton*, 823 S.W.2d 187, 195 (Tenn. Ct. App. 1991)); *Johnson v. Tennessee Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006). A motion for a directed verdict should not be granted "if the party with the burden of proof has presented sufficient evidence to create an issue of fact for the jury to decide." *Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002) (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 231 (Tenn. Ct. App. 1999)). A party has created a jury issue when there is doubt about the conclusions drawn from the evidence. *Id.* The grant or denial of a motion for directed verdict is a question of law; therefore, the court's decision is subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

In granting the motion for a directed verdict, the court found that Plaintiff failed to establish that it had reached an agreement with Defendant to return the leased equipment. The court further held that even if the parties had reached an oral agreement, the alleged agreement to return the equipment was void because it was not reduced to writing as required by the terms of the lease agreements and as required by Tennessee Code Annotated section 47-2A-208(2). In so holding, the court found that Plaintiff was a merchant within the meaning of the Uniform Commercial Code.

Having reviewed the evidence in favor of Plaintiff, as we are constrained to do, we agree with the trial court that the parties never even reached an oral agreement regarding the return of the equipment. The evidence presented at trial reflects that the parties discussed the possible return of the equipment but never came to an agreement regarding the terms of the requested return. Accordingly, we conclude that the trial court did not err in granting the motion for a directed verdict because Plaintiff failed to present sufficient evidence to create a question of fact for the jury.

In the event of further appellate review, we will address whether the alleged oral agreement was an effective modification of the lease agreements even though it was never reduced to writing. The record reflects that the contract at issue, namely the lease agreements, included a modification clause that provided, in pertinent part,

No variation or modification of this Lease shall be valid unless in writing.

-12-

Additionally, Tennessee Code Annotated section 47-2A-208(2) provides,

> A signed lease agreement that excludes modification or rescission except by a signed writing may not be otherwise modified or rescinded, but, *except as between merchants*, such a requirement on a form supplied by a merchant must be separately signed by the other party.[2]

(Emphasis added). Plaintiff claimed at trial that the modification clause was void pursuant to section 47-2A-208(2) because the requirement was not separately signed, either on a form supplied by Defendant or within the lease agreements. Defendant asserted at trial Plaintiff did not need to separately sign the requirement because both parties were merchants. Thus, if Plaintiff proved that there was an oral agreement, the viability of the claim depended upon whether Plaintiff was a merchant within the meaning of the Uniform Commercial Code.

Plaintiff asserts that whether a party is a merchant is a mixed question of law and fact, while Defendant asserts that the issue is a question of law. We agree with Plaintiff that in this case, whether one engaged in the practice of mining is a merchant is a mixed question of law and fact. *See generally Brooks Cotton Co. v. Williams*, 381 S.W.3d 3d 414, 428 (Tenn. Ct. App. 2012) (holding that the question of whether a farmer is a merchant is a mixed question of law and fact). Thus, "'whether there are circumstances in existence that would make one a merchant is a question of fact, but that once those facts are determined, whether they make a person a merchant is a question of law.'" *Id.* at 423 (quoting 10 Williston on Contracts § 29:25 (4th ed.) (footnotes omitted)). The Uniform Commercial Code defines a merchant as follows:

> "Merchant" means a person who deals in goods of the kind *or* otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

Tenn. Code Ann. § 47-2-104(1) (emphasis added). Here, the lease agreements at issue pertain to Plaintiff's acquisition of earthmoving equipment necessary for the mining business. Plaintiff testified extensively concerning his experience with Caterpillar mining

---

[2]Defendant argues on appeal that the language in the contract overrides the provision in the Uniform Commercial Code pursuant to Tennessee Code Annotated section 47-1-102(3). This argument is without merit considering the official comments to the 2008 amendment to section 47-1-102(3). *See* Tenn. Code Ann. § 47-1-102(3), cmt. 1.

equipment in his mining business. Even when viewing the evidence in the light most favorable to Plaintiff, there was insufficient evidence for a jury to find that Plaintiff did not "hold[] himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." Tenn. Code Ann. § 47-2-104(1). Accordingly, we conclude that the trial court did not err in finding that Plaintiff was a merchant as a matter of law when he failed to present sufficient evidence to create a question of fact for the jury regarding its status as a merchant.

Plaintiff also raised a myriad of issues relating to the court's evidentiary rulings at trial and the jury instructions. Having affirmed the trial court's directed verdict, these issues are pretermitted.

## IV. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Thomas Energy Corporation.

_____
JOHN W. McCLARTY, JUDGE